TYRE S. OLIVER *v.* HIRAM C. BAIRD ET AL.

[44 South., 35.]

JUDGMENTS. *Default. Injunction. Case.*

An equity suit to enjoin a judgment, rendered by default against complainant as a nonresident defendant in an attachment at law, is maintainable where (*a*) defendant was without notice of the suit until after the judgment became final, (*b*) his post-office address was well known to the plaintiff in attachment, (*c*) and he would have received the notice had it been mailed him; and where (*d*) proof of publication was not on file when the judgment was rendered, (*e*) no entry in the records showed that a notice had been mailed to defendant and (*f*) the clerk was unable to testify that it was mailed.

FROM the chancery court of Lowndes county.

HON. JAMES F. McCOOL, Chancellor.

Oliver, appellant, was complainant in the court below; Baird and another, appellees, were defendants there. From a decree dismissing the suit complainant appealed to the supreme court.

The object of the suit was to enjoin and annul a judgment obtained against complainant, as a nonresident, in an attachment proceeding in the circuit court, where judgment had been taken against him by default. The bill charged that the appellant never had any notice of the attachment proceeding until after the judgment had become final, that if notice had been sent him by mail it would have reached him, that he called regularly for his mail, and that his post office address was well known to the plaintiff in the attachment proceedings. Proof of publication was not on file at the time of the entry of the judgment by default, and there was and is now no docket or other record entry in the circuit court showing that notice was ever mailed to appellant, and the clerk of the circuit court had no recollection of ever having done so.

*Thomas J. O'Neill,* and *Alexander & Alexander,* and *Geo. B. Power,* for appellant.

"The rule that a record is conclusive evidence of its own verity is not applicable in a direct proceeding instituted for the purpose of showing its falsity as to a matter which, if false, shows that the court pronouncing it as a judgment had no jurisdiction of the person of the defendant, and, consequently, that what purports to be a record is in fact no record at all. No consideration of public policy requires that one guilty of no negligence should be concluded by *ex parte* proceedings, of which he had no notice, because of a declaration made by the court, at the instance of his adversary, that he had such notice. . . . If the summons was not served the court had no power to adjudicate that, or any other fact, against her, and the whole fabric falls, unless she is forced in the outset to admit as true that which she avers to be false and that too when upon its truth depends her liability to its burden and upon its falsity her right to relief. We reiterate what was said in *Sivley v. Summers,* that, in direct proceedings instituted for the purpose of testing the validity of the judgment 'the truth must prevail though the record fails.' Relief may be sought through the interposition of the chancery court." *Duncan v. Gerdine,* 59 Miss., 550.

"A judgment pronounced without service of process, actual or constructive, and without a defendant's knowing that a court has been asked to adjudicate upon his rights is regarded with such disfavor at law that a variety of motions, writs and proceedings are there provided to overthrow it; and in many courts it is at all times and upon all occasions liable to be disregarded entirely upon having its jurisdictional informity exposed. But proceedings in equity are peculiarly appropriate for the exposure of this informity." Freeman on Judgments, sec. 495.

In this case there is no contention, and there could be none, that the appellant, who was the defendant in the attachment proceedings, had any actual notice of the instituting of the at-

tachment suit or of its pendency. He is absolutely uncontradicted in his statements that he never heard of the institution or pendency of the suit until long after the judgment attacked had been rendered and then he learned of it only through a letter received from a correspondent in Columbus to whom he had written with reference to other business—some insurance matter. If notice was ever mailed to him by the clerk, he never received it.

There is no positive proof that notice was ever mailed to him; the clerk, when testifying in the chancery proceedings, could not recall the time, nor the occasion, nor the kind of notice that he sent or claimed to have sent and there was no docket entry of any such mailing from which any conclusion could be made; he could only say that he had mailed it because it was his general custom to mail such notices; he had absolutely no independent recollection of the incident.

It is a fact, as shown by the record, that, at the time of the rendition of the judgment in the attachment proceedings in the circuit court, there was no "proof of publication" before the court; true, the judgment recites that the cause came on for hearing on "declaration . . . proof of publication on defendant Tyre S. Oliver, and proof of mailing to said defendant, etc.," but it is the falsity of these very recitals in the judgment that is attacked in the chancery proceedings.

"It is the uniform and unbroken course of decision, that, under all statutes which authorize the substitution of some other means for personal service of process, as a foundation for the jurisdiction of the court, the most exact compliance with those requisitions will be enforced. Unless such compliance be shown affirmatively, the proceedings will not be sustained." *Kerr* v. *Bowers,* 1 Smed. & M., 588.

*William Baldwin,* for appellee.

If there be anything in human testimony, the fact is proved beyond doubt, that the proper notice of this attachment was

published in the Columbus Commercial, a newspaper printed and published in Columbus, Lowndes county, Mississippi, for for three consecutive weeks, just prior to the November term 1902 of the circuit court of Lowndes county, Mississippi, to which term of court this attachment was returnable. It is the fact of the publication alone, that the law is concerned about.

Counsel for appellant give themselves much worry about the paper known as "proof of publication" of this notice. The law nowhere requires that what is called "proof of publication" be made and filed in the papers. What the law does require is the fact of the publication, and it matters not whether any "proof of publication" ever be made by the newspaper men and filed in the papers of the cause.

Section 1803 of the Annotated Code provides a way that proof of publication may be made, and when such is done that it "shall be evidence" but it does not pretend to be anything but directory or to suggest that it is the only method of providing that a publication has been made. But on the contrary, § 143 of the Annotated Code, the attachment method, provides that publication shall be made and notice sent to post office of defendant by the clerk, and the clerk shall make it appear to the court that he has done so—clearly showing that the manner of "making it appear" is to be left to the court to whom it is to be made to appear, for that court alone can judge of what is sufficient to "make it appear" satisfactory to it, that the proper publication had been made to give it jurisdiction to proceed further. Counsel for appellee cite *Wood v. Page,* 55 Miss., 107, to sustain their contention, but the commonest examination will show that there is no support in that case for their position.

The case was a direct appeal from a judgment by default on what was claimed to be insufficient notice—a course that Oliver should have pursued on February 25, 1903, instead of going into a court of equity. The Code of 1871, § 1477, of

the attachment chapter, permitted judgments by default on "proof of publication" of the notice thereof, and the court held on this direct appeal, that the statute must be complied with and the "proof of publication" made.

Section 143 of the attachment chapter of the Annotated Code requires no such thing.

It provides that publication must be made and notice mailed, and that it must be made to appear to the court that such has been done.

But waiving all other questions and conceding that there was never any notice by publication given defendant, Oliver, the fact remains that the property sold was seized by the sheriff of Lowndes county, Mississippi, under the attachment writ, and sold by him, and this is sufficient notice to give the court jurisdiction in all cases over the property itself, and controversies over it; in other words, the levy of the attachment writ upon the property of the defendant is sufficient notice to him of the suit so far as that property is concerned, and gives the court jurisdiction to proceed to sale of that property. *Bull v. Ware,* 34 Miss., 147; *Ridly* v. *Ridly,* 24 Miss., 654; *Cooper v. Reynolds,* 10 Wallace, 308.

But even if it be true that the circuit court was without jurisdiction to proceed to judgment and sale of this property as was done, a court of equity has nothing to do with it.

This defendant's right was clear and untrammeled to have appealed from the judgment of the circuit court, and if the record disclosed want of jurisdiction to sustain it, this court would have reversed it.

If error there was, direct appeal or *certiorari* would have corrected it at once. 16 Am. & Eng. Ency. L. (2d. ed.), 374.

MAYES, J., delivered the opinion of the court.

The facts in this case show that the judgment entered was a void judgment. This being true, the facts here bring the case clearly within the rule laid down in the case of *Duncan*

v. *Gerdine,* 59 Miss., 550, and resort to a court of equity under the circumstances was proper. At the time judgment was rendered in this case the record shows that there was no proof of publication before the court.

*For these reasons, the cause is reversed and remanded.*