Mr. Justice Clayton
delivered the opinion of the court.
This is an appeal from a decree of the chancellor, overruling a demurrer to the bill of the complainants, the present appellees. The case as it existed before the chancellor, will be found in Smedes & Marshall’s Chancery Reports, p. 207, under the name of Robins and others v. Embry and others. It involves the validity of certain assignments made by the Commercial and Railroad Bank of Vicksburg, for the benefit of certain of its creditors. The objections urged in argument against the assignment are very numerous, and it may not be necessary to advert to all of them. The more prominent will receive our attention.
It is now settled that a bank may make an assignment of its effects, for the payment of its debts. Such assignments, whether made voluntarily, or by operation of law, have often been upheld. Hopkins et als. v. Gallatin Ins. Co., 4 Hump. 403; Beckwith v. Windsor Manuf. Co., 14 Con. 594; Union Bank of Tennessee v. Ellicott, 6 Gill & Johns. 363; Nevitt v. Bank of Port Gibson, 6 S. & M. 513. The objection, on this part of the case however, is, that the assets of a bank constitute a trust *430 fund, for the payment of all its debts, and that no disposition can be made of this trust futid, but one which secures equality among the creditors ; in other words, that no priorities or preferences can be given.
In one sense the assets of a bank do constitute a trust fund, for they cannot be lawfully diverted from the payment of debts; yet no creditor, unless he have a judgment, has such an interest in them, apart from an assignment, as will enable him to subject them to his debt. A particular assignment may be made of part of the effects to pay a specified debt. Payment may be made to a single creditor, though such payment may exhaust the fund. These preferences could not be given if any definite trust attached to the assets, in favor of all the creditors. A preference given by a general assignment does not, therefore, of necessity, invalidate the deed; yet all such preferences are liable to objection, and must be watched with jealousy. Though they may create suspicion, they are not in themselves fraudulent.
Another objection is, that the corporatioj^Mfcnot the power to assign away the railroad, and the frapH^ annexed to it. To this it is replied in argument, that the conveyance does not assign the road itself, but the profits ; and that whilst there can be no transfer of the road itself, nor any execution sale of it, yet the profits may be assigned.
The question as to the power of the corporation, need not now be considered. That is a matter between the state and the corporation, with which third persons have nothing to do. American Colonization Society v. Wade, 7 S. & M. 663. Whether the road is the subject either of assignment, or of sale under execution, depends upon the nature of the estate which the corporation has in it.
In Pennsylvania it has been decided, that a turnpike company had no interest or estate in the land, over which the road run, but only an easement, which was not the subject of sale. Ammant v. Pittsburg Turnpike Company, 13 Serg. & R. 210. In North Carolina, it has been decided, that a railroad company has an. estate in the land, and not a mere easement, and that the *431 estate is subject to sale under execution. The estate, it is there said, results not only from the express provisions of the charter, but from the necessity of the case. State v. Rives, 5 Ired. Law Rep. 307. It is not the franchise which is sold, but the property and estate of the corporation. The tangible property and estate of a corporation are no more exempt from execution, than those of an individual. Ibid. In the cause before us, the charter authorizes the corporation to purchase the lands necessary for the site of the road, and the requisite depots, stations and buildings, and to possess and hold the same in fee simple. Act of 1833, sec. 4. /If the estate be one in fee, we do not see why it is not the subject of assignment or of execution sale.i It is insisted in argument, that by this conveyance only the accruing profits are transferred. That is literally true ; but whether that would not pass the estate, may be matter of doubt. See Schermerhorne v. Schermerhorne, 6 Johns. Ch. 70; 1 Pow. on Mort. 326, n. But that doubt need not now be solved, because so far as this objection |^K^n assignment of either would be good. It is probable, ho^^Bfthat the estate passes to the same extent that the proñtsW^tfthenvise the land might be sold, and the deed thus rendered inoperative. Yet we do not decide this.
The franchise itself cannot be sold, or assigned without the consent of the power which granted it. It is a mere easement, a privilege granted to an artificial being, not the subject of sale. The sale or-assignment of the road does not carry the franchise with it, nor does it work a dissolution of the corporation. It may be ground of forfeiture if insisted on by the state, but does not of itself operate a dissolution. 5 Iredell, as above.
The deeds of assignment transfer all the debts, books, accounts, choses in action, and real and personal estate to the assignees, upon trust first to enable them to borrow the sum of $250,000 to complete the railroad to Jackson, and then out of the profits to pay first the sum so borrowed — next the salaries of the assignees and all the other expenses of the bank and the railroad, and the balance to apply to the payment of such general creditors, as might come in under the deed.
One of the leading motives assigned for making the convey- *432 anee, was to prevent a forfeiture of the charter. The charter declares, that if the road be not completed within six years from the first election of directors, the act of incorporation should be null and void. Notwithstanding this declaration, it is well settled, that the charter would not be void, until the state by proper judicial proceeding had obtained a judgment of forfeiture. The assignment of all of its estate and property to trustees, by which it was disabled, from a compliance with its own share of the charter, was perhaps a not less valid cause of forfeiture. People v. Manhattan Company, 9 Wend. 351; 4 Wheat. 698. This motive will not avail therefore to sustain the deed, if it be obnoxious to the law.
It is insisted in argument, that the priority given to the person who might advance the money for the completion of the road, makes the deed fraudulent; and that the very high salaries to be paid tó the three assignees, eight thousand dollars each, is likewise fraudulent. *
It must be borne in mind, that in the present attitude of the cause, our attention is confined to the question of fraud in law; if the deed be not fraudulent on its face, we cannot now pronounce against it.
A provision in a deed to secure future advances, is not necessarily fraudulent; it depends on the bona jides of the transaction. Conard v. Atlantic Insurance Company, 1 Peters, 386. It cannot, therefore, be absolutely asserted of this provision, that it is fraudulent in law. The same is true in regard to the salaries of the assignees. They are certainly very high, and are as certainly calculated to excite suspicion. Yet the large amount of property transferred — the responsibilities to be incurred — the duties to be performed, and the degree of skill requisite for their proper discharge, may make them not unreasonable. All these are matters of proof, and cannot be determined on this demurrer.
A far more important and serious difficulty however remains. These assignments are of indefinite duration. They transfer all the property and estate, real and personal, of every kind and description, with some immaterial exceptions, to the assignees. They also transfer the surplus profits of the railroad, to be man *433 aged by the assignees, until all the debts shall be paid. If this be not an assignment of the railroad itself, it is not less liable to objection ; because the profits and all beneficial interest and enjoyment of it are intended to pass. No provision is made for a sale of the property. What interest had the corporation in the railroad at the time of assignment? By the charter it would seem a fee simple. The banking privileges were to cease in thirty years, but there is no limit to the franchise of the railroad, and it is expressly authorized to hold the property and estate necessary for the purposes of the road in fee simple. Sec. 4, of Charter. What then is to become of the railroad and its appurtenances, after the object of the assignment has been attained, and its purposes fulfilled ? Plainly they revert to the grantor, the corporation, after the lapse probably of many years.
Does the law permit a debtor in failing circumstances, to convey all his property to trustees, so as to exempt it from execution for an indefinite time, to authorize them to hold it against creditors, until the profits, pay all charges, expenses and debts, and then to reconvey it, or permit it to revert to the original owner ? Can property in this manner and to this extent be withdrawn from the operation of the law, in its due course against the consent of existing creditors ?
It is a settled rule of decision in such cases, that any provision which materially hinders and delays creditors in the assertion of their rights, especially when coupled with a reserva^ tion of any part of the property to the grantor in the deed, makes the whole void. No permanent, lasting and material benefit can be secured to him, without vitiating the whole conveyance. Pike v. Bacon, 21 Maine, 280; Hafner v. Irwin, 1 Iredell Law, 490; Hyslop v. Clark, 14 Johns. 458; Harris v. Sumner, 2 Pick. 129; Harney v. Pack & Clifton, 4 S. & M. 229.
In a late case it was said, “ the time has come when, if possible, some plain rule should be laid down, in regard to these conveyances, and that rule is this, that the debtor may make an appropriation of his property to the payment of particular creditors— but there must be no condition, direct or indirect, controlling this application. All over and above what is necessary for *434 the devotion of the property to the payment of the debts, cometh of evil.” 1 Iredell, 500.
In this case, the property is not to be sold to pay the debts; on the contrary, it is carefully reserved from sale. The assignees are to keep up the railroad, until the profits pay the debts. The creditors are prohibited from touching the corpus, the property itself. The assignment is to continue, until the profits pay the debts, and then the property itself is to revert to the grantors. Its direct tendency is to lock up the estate indefinitely— to create a perpetuity —to hinder and delay creditors unreasonably, and to secure an ultimate and permanent advantage- to the grantor, the corporation. All these objects fall under the condemnation of the law; and in our view these deeds are void.
The supreme court of Louisiana, in a case arising under these deeds of assignment, has also decided that they are void by the principles of the common law. Fellows v. Commercial and Railroad Bank of Vicksburg, 6 Rob. La. R. 246.
The decision of this point renders any farther examination of the other errors assigned unnecessary.
The decree is reversed and the bill dismissed.
Mr. Chief, Justice Sharkey having been a director in the bank at the time of the assignment, delivered no opinion in the case.