JONES, et al. *v.* NEW ORLEANS & N. E. R. Co., et al.

June 9, 1952.

No. 38453 (59 So. (2d) 541)

Hedgepeth & Norsworthy, for appellants.

J. E. Skinner, and Cameron & Cameron, for appellees.

808

**Hedgepeth & Norsworthy,** for appellants in reply.

810

**Ethridge, J.**

This case involves principally questions of the interpretation of the effect of three deeds to a railroad, of whether abutting landowners, who have acquired title by adverse possession, own up to the center line of the adjoining railroad right of way, and of lack of process upon certain parties.

The appellants, 59 in number, are lineal descendants of Ransom J. Jones, who at the time of his death intestate in 1872 owned the NE¼ of the NE¼ of Section 32, Township 1 North, Range 13 East, Jasper County, Mississippi. Ransom Jones left surviving him his widow, Melinda Jane Jones and eight children. Under the law in effect at that time, his widow received only a dower interest in the property, and his eight children received each a one-eighth interest. In October, 1881 and June and July, 1882, the widow and seven of the children executed deeds to the New Orleans and Northeastern Railroad Company, an appellee. One issue here is whether those deeds had the effect of purporting to convey only easements or fee titles to the minerals under 10.5830 acres covered in those deeds and which traversed the stated 40 acre tract across the approximate center and in a northeasterly direction. This land was claimed in fee by the railroad under these conveyances from the heirs of Ransom Jones and by adverse possession. The land is located within the Town of Heidelberg and in a producing oil field. All parties agree that the railroad owns easement rights over the strip of land; the main controversy is over the right to the oil, gas and other minerals. The estates ostensibly conveyed by the deeds are important because they thereby limit the otherwise admitted adverse possessory titles of the railroad.

I.

On October 6, 1881, M. J. Jones, apparently the widow of Ransom J. Jones, executed the following deed:

"Know All Men By These Presents, That for and in consideration of the benefits to accrue to me by the construction of the New Orleans and North Eastern Railroad, and for the sum of one dollar to me in hand paid by said Company, I hereby grant, bargain, sell and quitclaim unto the said New Orleans and North Eastern Railroad Company, a

Right of Way for two hundred feet, through the following lands, to-wit;

"NE¼ of NE¼ and SW¼ Sec. 32 T. 1 N, R 13 E. Reserving the right to Cultivate any of Said land not used in the Construction and operating said land situated in said County, being one hundred feet from the centre of the Road Bed, on either side, to be constructed by said Company, and I hereby covenant to warrant and defend the title of said Company to said lands against any and all persons claiming under by or through me."

This instrument clearly purported to convey to the railroad only an easement. It is substantially similar to the deed interpreted in New Orleans & Northeastern R. R. v. Morrison, 1948, 203 Miss. 791, 35 So. (2d) 68. See Annotations, 132 A. L. R. 142, 172 (1941); 136 A. L. R. 379 (1942).

On June 29, 1882, M. J. Jones, apparently the widow of Ransom J. Jones, executed for herself and for M. C. Jones, E. B. Jones and W. B. Jones, heirs of Ransom J. Jones, this deed:

"In consideration of the benefits to accrue to us from the location of the Depot on our land by the New Orleans and North Eastern Rail Road Company and the further consideration of the sum of one dollar we sell and warrant to said New Orleans and North Eastern Rail Road Company the land described as follows:

"Beginning at a point one hundred feet west of where the located line of survey crosses the East and West boundary line between the SE¼ of NE¼ and the NE¼ of NE¼ of Section 32 TIN, R 13 E., in Jasper County, Mississippi and run West two hundred feet thence North Easterly parallel to the right of way and two hundred feet therefrom to a point in the NE¼ of NE¼ of said Section opposite Section 3052 of the Northern Division of said Rail Road, thence at right angles with said line two hun-

dred feet to the right of way thence Southwesterly along the right of way to the point of beginning to have and to hold for Depot Sidings Switches and other Rail Road purposes.''

■ ■ This instrument has the effect of ostensibly conveying to the railroad the fee title to a 200 foot wide strip of land immediately to the west of and adjacent to the railroad right of way. The deed is in the usual form of a general warranty deed conveying ''the land'', described by metes and bounds. Code of 1942, Sec. 833. The clause in the latter part of the instrument ''to have and to hold for Depot Sidings Switches and other Rail Road purposes'' can not limit the effect of the granting clause, if it is considered as repugnant to the granting clause. We think that this recitation is simply descriptive of the use to which the land will be put, and does not limit or restrict the estate conveyed. Mississippi Central R. Co. v. Ratcliff, Miss., 59 So. (2d) 311, decided this date; Annotation, 132 A. L. R. 142, 145, 159 (1941).

On July 14, 1882, L. S. Morrison, as attorney in fact for R. J. and K. A. Jones, M. A. Huddleston and M. J. Mounger, four of the heirs of Ransom J. Jones, executed the following deed to the railroad:

''In consideration of the benefits to accrue to us by the building of the New Orleans and North Eastern Railroad through our lands and the further consideration of one dollar to us paid we hereby convey and quit claim to the New Orleans and North Eastern Railroad Company the right of way of two hundred feet through the

''N½ of NE¼ Sec. 32, T 1 N, R 13 E, Jasper County, Mississippi We also further sell, convey and quit claim to said Company a further strip of land two hundred feet wide on the West side of said Rail Road beginning at the boundary line between the N½ and the S½ of said NE¼ of said Section, where said boundary line crosses the said right of way and extending North Easterly to Station No.

3052 of Northern Division of said Road for depot, siding, switches and other rail road purposes.''

This deed undertakes to convey in the first grant a 200 foot easement over the 40 acres in question for the right of way of the railroad. The second granting clause conveys a fee title to a ''strip of land 200 feet wide on the west side'' of the railroad. The west 200 feet is here conveyed in fee simple, including the minerals. The reference after the granting clause, ''for depot, siding, switches and other railroad purposes'', is an expression of the purpose of the execution of the deed, but does not limit the effect of the granting clause. Mississippi Central R. R. Co. v. Ratcliff, supra; Annotation, 132 A. L. R. 142, 159 (1941). These interpretations of the three deeds affirm the conclusions of the chancery court.

## II.

There is no record of a judicial partition of the lands in this 40 acre tract among the eight heirs of Ransom J. Jones after his death in 1872. It was stipulated that the courthouse at Paulding, in the First Judicial District of Jasper County, burned on September 10, 1932, that all of the deed records in it were destroyed in that fire, and that neither the original nor any recorded version of any deed out of Ransom Jones or his heirs is available. However, W. B. Jones, the only surviving child of Ransom Jones, testified at the trial in April, 1951. He said that more than fifty years ago there was a judicial partition in the Chancery Court of the entire 40 acres, and that he had conveyed the five acres allotted to him in the partition to R. P. Clayton in about 1901. The chancellor found that this was a fact. W. B. Jones did not have any definite recollection about conveyances out of the other heirs of his father. However, his testimony and that of Madison Travis, an attorney, were undisputed that the railroad had been in possession of the 200 foot right of way and easement and also the

200 foot strip west of the right of way for about seventy years.

Appellees, Cecil Travis and twenty other persons claiming under their predecessor in title, M. G. Travis, have been in adverse possession of the land abutting and adjacent to the railroad right of way, other than as to the west, 200 foot fee strip of the railroad, for more than thirty-one years. In this suit they claimed the title to the minerals under and to the center of the railroad as appurtenant to their ownership on each side of the railroad right of way. Apparently the Jones heirs had transferred or abandoned any claim to the lands in this 40 acre tract early in the 1900's. The chancery court found that they lived in various sections of the United States, from the states of Washington to Florida, and that none of them had ever made any claim to any part of these lands or the minerals thereunder since they or their predecessors in title lost title to the abutting lands by adverse possession.

In November, 1945, by original and amended bills, over forty of the heirs of Ransom Jones filed a bill of complaint in the Chancery Court of the First Judicial District of Jasper County against appellee railroad, Rogers Lacy, and a number of other Jones heirs who were not parties complainant, alleging that the foregoing deeds conveyed only easements to the railroad, and that the complainants owned the minerals under it as the heirs of Ransom Jones. Later Cecil Travis et al., claiming under M. G. Travis, were made parties defendant to the bill, which averred that the Travis claimants were asserting title on each side of the railroad by adverse possession, which they concededly had, and that they were also claiming title to the minerals under and up to the center of the railroad right of way, appurtenant to their respective adverse possessory titles on each side of the railroad. The bill sought to cancel the clouds asserted by the railroad, its lessee, and the owners of the land adjacent to the right of way. The

abutting landowners, Cecil Travis et al., claimed title to the minerals up to the center line on each side under the railroad easement, and filed cross-bills to remove the clouds asserted by complainants, appellants·here, the heirs of Ransom Jones. Hence this was a three-way lawsuit, between the heirs of Ransom Jones, the railroad and its lessee, and the Travis group, asserting adverse possessory titles to the abutting lands and therefore to the appurtenant minerals under the railroad easement.

The final decree adjudicated in effect that the abutting landowners, those who had obtained title to the lands adjacent to the railroad right of way by adverse possession, also had obtained title to the minerals under the right of way up to its center line on the respective sides. There was an agreed or consent decree among all of the parties other than the Jones heirs, appellants, as to the distribution of the mineral interests under the right of way. But the decision of the chancery court concerning the ownership of minerals under the right of way is crucial as between the Jones heirs, appellants, and the appellees who were the adjacent landowners. We think that the trial court reached the correct conclusion. In New Orleans & Northeastern R. R. Co. v. Morrison, 1948, 203 Miss. 791, 35 So. (2d) 68, it was held that ▮▮▮ conveyances of land bordering on a railroad easement carried title in fee to the center line of the easement as to sub-surface minerals, and also reversionary right to the surface, in the absence of a clear statement of intention to the contrary. This was in accord with Panhandle Oil Co. v. Trigg, 1927, 148 Miss. 306, 114 So. 625. The reasons for the rule of the Morrison case are well stated in 6 Thompson, Real Property, 1940, Sec. 3396, pages 606-607:

"'* * * The intent to convey to the middle line of the highway arises from the presumption that the adjoining owners originally furnished the land for a right of way in equal proportions; and from

the further presumption that such owner, in selling land bounded upon the highway, intended to sell to the center line of the street, and not to retain a narrow strip which could hardly be of use or value except to the owner of the adjoining land.

"Various reasons are given for the rule, as that 'the way was taken out of the party that hath other lands adjoining,' and that the owner of the land laid out in lots and streets gets his pay for the streets in the increased value of the lots, and so purchasers, one after another, pay for the street in paying for the lots. Other reasons for the rule are the absence of practical use to the grantor of relatively small, odd-shaped parcels of land which would remain in his possession, the greater value to the grantee who has acquired adjacent land, and who has an immediate interest in the properties adjoining, the public convenience, which is best served by having control of highways and streets in the owners of adjacent properties, rather than in distant owners, who have no incentive to keep them up, the concern of the state and other political units as to who shall determine and pay for improvements, prevention of disputes regarding precise boundaries, and the embarrassment and confusion which would prevail if a different rule existed. The rule is the same whether applied to the streets of a city or to the highways in the country."

Many of these same reasons require the application of this rule to the acquisition of abutting tracts by adverse possession. The Jones heirs, appellants, live in various sections of the country, and apparently none of of them have ever made any claim to any part of the minerals under the railroad right of way until this action was begun. They have in effect abandoned claims to them for around 50 years. The railroad, under its deeds, has been asserting and exercising only an easement over its right of way. Appellees, abutting owners,

have admittedly been exercising adverse possession over the adjacent lands for more than 31 years. The possession of the same under those circumstances should be extended constructively to the center line on the respective sides of the railroad right of way.

This was forecast in Skrmetta v. Moore, 1947, 202 Miss. 585, 600, 30 So. (2d) 53, 57, where it was said: "When as in this state, Panhandle Oil Co. v. Trigg, supra, a conveyance by a lot or block number or according to a plat passes the ultimate fee to the center of the street on which the conveyed land abuts, the abandonment of the street or way operates to confer on the owner of the abutting lands the entire title as against all persons including the dedicator and his heirs, and this remains true even if the title of the abutting owners was acquired by adverse possession. See Annotated cases 70 A. L. R. p. 567."

The quoted reference to 70 A. L. R. 567 is a citation to Waterloo Condensed Milk Co. v. Voges, 1925, 316 Ill. 477, 147 N. E. 373, which appears to be the only case specifically considering and applying the rule that the acquisition of abutting tracts by adverse possession extends to the center of an adjacent right of way. There a street was involved, and substantially the same issues were raised as here. See also Bellefontaine Improvement Co. v. Niedringhaus, 1899, 181 Ill. 426, 55 N. E. 184. The Waterloo case was cited with approval in People ex rel. Alexander v. City of Mt. Vernon, 1949, 404 Ill. 58, 88 N. E. (2d) 45, 49. Hence the landowners adjacent to the railroad easement, who had obtained title by adverse possession, own the subsurface minerals to the center of the adjacent right of way. See Annotation 85 A. L. R. 404.

 Appellants further argue that the court was nevertheless in error in holding that Clayton, Burns, Cooper, and Huff were adjoining or abutting landowners as to that part of the railroad right of way immediately east of the western 200 foot strip owned in fee by the

railroad. But appellants are limited to the strength of their own title, and can not complain of a consent decree which is satisfactory to all of the successful parties, appellees.

## III.

Appellants also say that the chancery court's decree was void in toto because there was no process upon certain necessary and indispensable parties to this suit, which they say is an action to quiet and confirm title. The parties upon whom no proper process was obtained are several of the Jones heirs who were made parties defendant by appellants, complainants below, who are also Jones heirs. We do not think that this is a suit to quiet and confirm title, under Code of 1942, Secs. 1314, 1323. See Griffith, Mississippi Chancery Practice (2d Ed. 1950), Secs. 113-114. In a suit to quiet and confirm, the owner may bring an action if he is in possession, or if he is out of possession, provided there is no adverse occupancy of the land by others. See Griffith, ibid, Sec. 115. Yet under the rule adopted in section II of this opinion, appellees, abutting owners, were in constructive possession of the subsurface minerals under the railroad right of way. And in addition, the original and amended bills of complaint, although drawn in somewhat broad terms, were clearly designed to cancel the clouds asserted by appellees upon appellant's title. In a suit to remove clouds under Code Sec. 1324, the foregoing limitations upon the right to bring this action do not exist, and the complainant may proceed against those of his own choosing, provided he joins all of those interested in a specific or particular cloud or claim of title. Griffith, ibid., Sec. 115. For these reasons the present action could not be a suit to quiet and confirm title. We construe it to be a suit to remove clouds.

With reference to the parties upon whom process was not obtained, and for which appellants complain, the pleadings reflect that Rogers Lacy and R. J.

Carraway had already assigned their interests in the lands to others, so they were neither necessary nor proper parties. Griffith, ibid., Sec. 115. ██ ██ Republic National Bank of Texas, mortgagee, R. J. McBean, Trustee, was a lienholder upon an interest of one appellee, who was a party, and benefited by the decree, so error, if any, caused by failure to obtain process upon them was harmless. It is not shown that Guaranty Bank and Trust Company of New York, and William C. Cox, trustee, had or claimed any interest in the land. ██ ██ The parties filed herein what they designate as a "suplemental record", which consists of certified copies of certain proofs of publication and of personal process which are on file in the chancery clerk's office of Jasper County, but which were not incorporated in the bound volumes of record prepared by the chancery clerk. No motion to strike this "supplemental record" has been made. Although there is no express agreement to that effect, the result of the briefs of the parties is to agree that the court may consider the "supplemental record". Ordinarily we would not consider it, but under these peculiar and limited circumstances, we will.

██ ██ The "supplemental record" reflects a certified copy of a personal process had upon Henry and Amie or Amy Reed on November 29, 1950, several months prior to the hearing and final decree of April 2, 1951. The process does not reflect when the return was filed with the court papers, but since the chancery court in its final decree expressly adjudicated that the Reeds had been duly and legally served with process and there is no proof whatsoever that this process was not before the chancellor when he rendered the decree, we hold that Henry and Amie Reed were properly served with personal process and are bound by the final decree.

The "supplemental record" reflects that publication of nonresident process was properly made in time for the following parties: Dick (R. C.) Jones, Nell Jones

(Mrs. Lucy Nell Jones McGowan), Mrs. Lucy Fewell Jones, Mrs. Ida May Jones Spight, Mrs. Erin Hays Jones, Mrs. Harvey Mounger, Mrs. Kenneth A. Jones, Jr., and Mrs. Mary Harvey Jones. ██ ██ However, the record affirmatively shows that proof of publication as to these parties was not made by the publisher and filed until several months after the final decree. Hence there was neither before the chancery court nor on file in the court papers at the time of the final decree of April 2, 1951, proof of publication of nonresident process upon these parties. In Oliver v. Baird, 1907, 90 Miss. 718, 44 So. 35, it was held that at the time of the entry of a judgment, proof of publication of process on nonresident defendants must be before the court. To the same effect is Austin-Western Road Machinery Co. v. Webster County, 1934, 170 Miss. 601, 154 So. 723; Griffith, Mississippi Chancery Practice (2d Ed. 1950), Sec. 238. Since the record affirmatively reflects that the chancery court did not have before it at the time of its final decree such proofs of publication of process, the established rule of these cases requires us to hold that the foregoing enumerated parties are not bound by the final decree.

██ ██ According to affidavits filed in this court by an attorney for appellants, Tom Lamb and Mrs. Celia Byars Hirsch had been dead many months before process by publication was attempted to be had upon Lamb, and before her attorney erroneously made Mrs. Hirsch a party complainant to the amended bill. Appellees made no motion to strike these affidavits, made no counter-affidavits, and rely upon the recitals of the decree alone. The heirs at law of these persons are appellants here. No process below was had upon the heirs of Tom Lamb, and no effort was made below to revive the suit in the name of the heirs of Mrs. Hirsch. Under this peculiar state of the record, and in view of the brief of appellants and appellees, we think that we should notice the undisputed facts in these affidavits, which affect the

jurisdiction of both the chancery and this court. We hold that neither Tom Lamb nor Mrs. Celia Byars Hirsch, nor their heirs, are bound by the decree below.

With the foregoing exceptions, all of the parties complainant and defendant, and cross-complainant and cross-defendant, are subject to the adjudications of the final decree of the chancery court of April 2, 1951. Hence the decree of that court is reversed as to the appellants upon whom no process was had at the time of the decree, as enumerated in Part III of this opinion, and dismissed as to them, without prejudice. The remainder of the decree is affirmed.

Affirmed in part, and reversed and dismissed in part without prejudice.

**Roberds, P. J.,** and **Lee, Kyle,** and **Arrington, JJ.,** concur.