Percy JOHNSON, Chinella Kyles, Gertrude Lawrence, Richard Fleming, Jerry and Rhonda Chalk, John and Lillie Pugh, Benita Buice, Patricia Cromwell, Linda Delegram, Dewayne Opps, Clinton and Dorothy Paden, Patricia and Vernell Sanders, Leon and Jacqueline Sherrod, Fabian Wilson, E.L. Pennebaker, Marry Moffett, Mitchell and Thomas Cleveland, Leon Ghetti, for Themselves, and Others Similarly Situated Plaintiffs

v.

KANSAS CITY SOUTHERN, Illinois Central Railroad, Sprint Communications Company, L.P., U.S. Telecom, Inc., Utelcom, Inc., Ucom, Inc. and Sprint International Communications Corporation, Sprint Corporation, Qwest Communications Corporation, Interstate Fibernet, Inc., Gulf States Transmission Corp., Gulf States Fibernet and Does 1 to 100 Defendants

No. 3:03CV360LN.

United States District Court, S.D. Mississippi, Jackson Division.

Sept. 21, 2004.

Eric Thurston Hamer, Kenneth C. Miller, Derek L. Hall, Miller, Hamer & Hall, PA, Jackson, MS, Micahel P. McGartland, McGartland & Borcherdt, Fort Worth, TX, Jimmie B. Reynolds, Jr., Michael Verdier Cory, Jr., Lee Ann Rikard, Reynolds, Cory & Rikard, LLP, Jackson, MS, for Plaintiffs or Petitioners.

Stuart G. Kruger, Robert F. Walker, Baker, Conelson, Bearman, Caldwell & Berkowitz, PC, Jackson, MS, Lloyd Eades Hogue, David S. Kelly, Nicole Duarte Martin, Lemle & Kelleher, New Orleans, LA, J. Stevenson Ray, Benjamin McRae Watson, Butler, Snow, O'Mara, Stevens & Cannada, J. Stephen Kennedy, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Thomas R. Crews, Mildred M. Morris, Paul H. Stephenson, III, Watkins & Eager, Michael B. Wallace, Phelps Dunbar, Eric Thurston Hamer, Kenneth C. Miller, Derek L. Hall, Miller, Hamer & Hall, PA, Jackson, MS, Henry J. Gutierrez, Phelps Dunbar, LLP, Gulfport, Michael P. McGartland, McGartland & Borcherdt, Fort Worth, TX, Jimmie B. Reynolds, Jr., Michael Verdie Cory, Jr., Lee Ann Rikard, Reynolds, Cory & Rikard, LLP, Jackson, MS, for Defendants or Respondents.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

There are several motions pending in this cause, including a motion by defendant Kansas City Southern Railway Company (KCS) for summary judgment on the basis that plaintiffs lack standing to pursue their claims herein, which motion is joined by defendant Illinois Central Railroad (ICR) and by defendants Sprint Communications Company L.P., U.S. Telecom, Inc., UTELCOM, Inc., UCOM, Inc., Sprint International Communications Corporation and Sprint Corporation (collectively the Sprint defendants); a motion by plaintiffs for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure; and a motion by defendant/counterplaintiff Interstate FiberNet (IFN) for class certification. These motions have been fully briefed by the parties and are ripe for decision.

The twenty-seven plaintiffs filed this class action seeking to represent a class of plaintiffs in pursuit of claims against defendants from the alleged improper installation of fiber optic cable on property they claim to own. Plaintiffs' complaint and motion for class certification define the class of persons sought to be represented by plaintiffs as consisting of

[a]ll persons and/or legal entities, who currently own, or who owned at any time since 1980, land in the State of Mississippi which: (1) underlies or abuts a portion or part of the Kansas City Southern Railroad Corridor from the location where the Kansas City Southern Railroad intersects the Alabama state line in Lauderdale County, Mississippi; (2) to the location where the Kansas City Southern Railroad intersects the Louisiana state line in Warren County, Mississippi; and (3) where the Kansas City Southern has a railroad right of way on which the Defendants herein have constructed, installed, maintained, sold, leased and/or utilized fiber optic cable and/or conduits.

The proposed class, by definition, is intended to consist only of those persons who own land on which the railroad is located or those whose property which abuts the KCS railroad corridor under circumstances that gives them ownership of the adjacent rail corridor or a portion thereof. Specifically excluded from the proposed class are persons who own real property abutting any part of the railroad corridor which KCS owns in fee simple because, obviously, if KCS owns the adjacent

rail corridor in fee simple (as opposed to having merely a right-of-way easement), it has the full right of control and possession of the property. In sum, then, the class is necessarily confined to landowners who have owned, since 1980, fee title to land in the rail corridor where fiber optic cable has been installed.

KCS, joined by ICR, its predecessor in title, has moved for summary judgment, arguing that based on the title documents and other relevant records, it is clear that none of the named plaintiffs owns any property upon which the fiber optic cable in dispute was installed. KCS thus contends that plaintiffs lack standing to pursue their claims in this cause, either for themselves or as representatives of the proposed class. *See Grant ex rel. Family Eldercare v. Gilbert,* 324 F.3d 383, 386 (5th Cir.2003) (recognizing standing "as 'an essential and unchanging part of the case-or-controversy requirement of Article III'") (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)); *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974) (stating that "if none of the named plaintiffs purporting to represent a class establishes a requisite case or controversy with the defendant, none may seek relief on behalf of himself or herself or any other member of the class").

KCS's position that plaintiffs lack standing is grounded on its contentions (1) that KCS, not the plaintiffs, owns fee title to the rail corridor abutting plaintiffs' property; (2) that plaintiffs do not own fee title to any portion of the rail corridor, but merely own a subdivision lot abutting the rail corridor which lot merely borders the rail line; (3) that even if the plaintiffs, or some of them, were found to own a portion of the rail corridor, the fiber optic cable in dispute is not located on the property which they own but rather is located on the opposite side of the rail corridor from plaintiffs' property; or (3) some combination of the above. The court addresses these contentions in turn.

KCS first argues that, regardless of what may appear from the title documents, it owns the entire rail corridor from Vicksburg to Jackson by operation of the legislative charter establishing its ultimate predecessor in interest for the purpose of constructing the railroad from Jackson to Vicksburg. In support of this contention, KCS relies exclusively on two cases, *Arthur v. President, Directors and Co. of the Commercial and R.R. Bank of Vicksburg,* 9 Smeedes & M. 374, 17 Miss. 394, 1848 WL 1948 (1848), and *Alabama & Vicksburg Ry. v. Mashburn,* 235 Miss. 346, 109 So.2d 533, 535 (1959).

As these cases explain, in 1833, the Mississippi Legislature incorporated the President, Directors and Company of the Commercial and Railroad Bank of Vicksburg (the Railroad Bank), of which KCS is the ultimate successor, for the purpose of constructing and thereafter operating a railroad between Vicksburg and Jackson. The Act of incorporation recited that the Company so formed "may procure by purchase or otherwise such lands or other property as may be necessary for the site of said road * * * and shall hold and possess the same in fee simple."

The court in *Arthur* addressed a situation that arose when the Railroad Bank fell into financial trouble prior to completing the railroad, and executed deeds of assignment which purported to convey all the railroad property to trustees to hold and manage until the railroad was completed and could pay off its debts. When judgment creditors of the Railroad Bank filed suit challenging the assignment, the court undertook to determine whether certain assets, including the roadbed on which the railroad was being built were subject to assignment. The answer, the court held, "depends upon the nature of the estate which the corporation has in it." 1848 WL 1948, at *19. The court observed that the charter "authorized the corporation to purchase the lands necessary for the site of the road, ... and to possess and hold the same in fee simple," and remarked that "[i]f the estate be one in fee, we do not see why it is not the subject of assignment or of execution sale." *Id.* The court later stated:

> What interest had the corporation in the railroad at the time of assignment? By the charter it would seem a fee simple. The banking privileges were to cease in thirty years, but there is no limit to the

franchise of the railroad, and it is expressly authorized to hold the property and estate necessary for the purposes of the estate in fee simple.

*Id.* at *21.

*Mashburn,* decided more than one hundred years later, involved a dispute over the ownership of a tract of land along the same rail corridor, and according to KCS, confirmed the court's holding in *Arthur,* namely, that the railroad held fee title to the entire rail corridor. The court, in fact, wrote that the quoted passage from *Arthur, supra,* "would seem to establish the title of the Railroad to its right-of-way to be that of a fee simple estate." *Mashburn,* 109 So.2d at 536. This court, however, is not persuaded that either case can fairly be construed as establishing KCS owns the rail corridor in fee simple as a matter of law without regard to the terms of the instruments by which its interest was acquired.

The court's opinion in *Arthur* is hardly a definitive pronouncement to that effect; and the opinion in *Mashburn,* when read in its entirety, tends to indicate that while that provision of the charter providing for fee simple ownership was to be taken into account, the charter was not itself determinative. The question in *Mashburn,* as phrased by that court, was whether the railroad held fee simple title to, or a mere easement in and over, a strip of land which was part of the right-of-way of the Railroad. 109 So.2d at 534. "The solution of the question," the court said, *"rest[ed] in the interpretation of the terms of the deed to the predecessor to the appellant Railroad,* in the light of the pertinent facts and circumstances extrinsic to the provisions of the deed, as affected by legislative enactments." *Id.* (emphasis added). The court subsequently commented that it had given "great weight to the effect of charter provisions and statutes," *id.* at 535, which authorized ownership by the Railroad in fee simple, but the court "turned to the deed itself" to ascertain the nature of the

interest acquired, and concluded that the deed conveyed the land itself, and not merely an easement. *Id.* at 537.

Had the court in *Mashburn* considered the charter determinative, it need not have ventured beyond its provisions in seeking to ascertain the nature of the Railroad's ownership interest; but it expressly determined that the deed itself, as informed by the terms of the charter, was determinative of the issue.[1]

■ Based on the charter, the Railroad Bank had the right to purchase land for the purpose of developing the railroad, and had the right to hold title to such land in fee simple. Presumably, if it was desirous of acquiring a fee simple interest in property it deemed necessary to construction of the railroad and it was unable to secure the landowner's voluntary agreement to convey such an interest, it had the right to seek condemnation of the property by terms of the charter. But in the court's opinion, the charter did not prevent the Railroad Bank from acquiring a mere easement which, it seems, was done in many cases. The court therefore rejects KCS's contention that it owns the "entire rail corridor" in fee simple.

Having said that, it appears undisputed that by the terms of the instruments of conveyance by which its interest was acquired, KCS does own certain portions of the rail corridor in fee simple, including portions which abut the property of a number of the plaintiffs, namely, Percy Johnson, Chinella Kyles, Gertrude Lawrence, Jerry and Rhonda Chalk, Mazola Watson and Sam Wiley, Jr. (all of whom are identified by the parties as the Johnson Heights plaintiffs), and Richard Fleming and John and Lillie Pugh (identified by the parties as the Boling Subdivision plaintiffs). The relevant title documents establish that the rail corridor, where it is bordered by Johnson Heights Subdivision on the south and Boling Subdivision on the north, was conveyed to the Railroad Bank in

---

1. It is notable, too, that KCS's predecessors in title have not contended that the original charter had the effect of vesting title to the railroad in fee simple regardless of the terms of the instruments of conveyance. For example, in *Vicksburg & M.R. Co.,* 67 Miss. 579, 7 So. 549 (1890), one of

KCS's predecessors contended only that it had a right-of-way easement based on the deed to its predecessor, the Commercial & Railroad Bank of Vicksburg, which granted the Railroad Bank "a right of way and free passage over a certain tract of land. . . ." *Id.,* 7 So. at 549.

1835 by a deed using the very same language that the court in *Mashburn* found had conveyed a fee simple title to the Railroad Bank. Accordingly, those plaintiffs have no property interest in the rail corridor and consequently no standing to pursue their claims in this cause.

KCS argues that fourteen of the remaining seventeen plaintiffs do not hold fee title to any portion of the rail corridor because they own lots in subdivisions whose descriptions and plats effectively locate the boundary line of the subdivisions at the edge of the rail corridor so that the lots of these plaintiffs, according to KCS, do not extend onto the rail corridor. KCS points out, for example, that the survey plats for Hibernia Hills Subdivision, in which lots are owned by a number of plaintiffs,[2] and Oakwood Heights Subdivision, in which Michelle and Thomas Cleveland own a lot, contain metes and bounds descriptions outlining the exact location of the overall subdivisions which utilize the north boundary of the rail corridor as a "monument of call." [3] It claims that similarly, the warranty deed to E.L. Pennebaker uses the north line of the rail corridor as a specific "monument of call" in the legal description.

■ KCS acknowledges that generally, conveyances of land bordering a stream, street, railroad easement or highway carry title to the center line thereof in the absence of a clear statement of intention to the contrary. *See New Orleans & Northeastern R.R. Co. v. Morrison,* 203 Miss. 791, 35 So.2d

68 (1948).[4] It submits, though, that where the boundary is described and defined using the line of the railroad as a "monument of call," the grant is limited to that line and does not extend to the center.

■ In *Jones v. New Orleans & Northeastern R. Co.,* 214 Miss. 804, 817, 59 So.2d 541, 545 (Miss.1952), the court explained the rationale for this rule, stating,

In *New Orleans & Northeastern R.R. Co. v. Morrison,* 1948, 203 Miss. 791, 35 So.2d 68, it was held that conveyances of land bordering on a railroad easement carried title in fee to the center line of the easement ... in the absence of a clear statement of intention to the contrary.... The reasons for the rule of the *Morrison* case are well stated in 6 Thompson, Real Property, 1940, Sec. 3396, pages 606–607:

" * * * The intent to convey to the middle line of the highway arises from the presumption that the adjoining owners originally furnished the land for a right of way in equal proportions; and from the further presumption that such owner, in selling land bounded upon the highway, intended to sell to the center line of the street, and not to retain a narrow strip which could hardly be of use or value except to the owner of the adjoining land. 'Various reasons are given for the rule, as that 'the way was taken out of the party that hath other lands adjoining,' and that the owner of the land laid out in lots and streets gets

2. That includes plaintiffs L.C. Bratton, Benita Brice, Patricial Cromwell, Linda Delegram, DeWayne Epps, Clinton and Dorothy Paden, Patricia and Vernell Sanders, Leon and Jacqueline Sherod and Fabian Wilson

3. A "monument of call" exists where boundary lines have been located and designated by monuments, or specific markers, whether natural or artificial.

4. Although KCS purports to acknowledge this, it points out in its rebuttal memorandum that "some jurisdictions have ... held that the presumption is the opposite for a railroad right of way—i.e., the conveyance of land adjacent to a railroad does not convey title to the centerline unless specifically conveyed," and directs the court to a Louisiana case, *Culligan Water Conditioning, Inc. v. Heirs of Watson,* 370 So.2d 129 (La.App.1979), writ denied, 373 So.2d 525 (La.

1979), and then, quoting at length from a Maine case, *Stuart v. Fox,* 129 Me. 407, 152 A. 413 (1930), goes on to argue that "support also exists for the argument that the centerline theory does not apply to railroad rights of way because the interests of owners adjacent to a public street are drastically different from the interests of owners adjacent to a railroad right of way." While that may be the view of other courts, the Mississippi Supreme Court has unequivocally held that the center line theory or presumption is fully applicable to railroad easements. *See Jones v. New Orleans & Northeastern R. Co.,* 214 Miss. 804, 817, 59 So.2d 541, 545 (Miss.1952)(applying center line rule where tract abutting railroad was obtained by adverse possession, holding that their adverse possession "should be extended constructively to the centerline on the respective sides of the railroad right of way").

his pay for the streets in the increased value of the lots, and so purchasers, one after another, pay for the street in paying for the lots. Other reasons for the rule are the absence of practical use to the grantor of relatively small, odd-shaped parcels of land which would remain in his possession, the greater value to the grantee who has acquired adjacent land, and who has an immediate interest in the properties adjoining, the public convenience, which is best served by having control of highways and streets in the owners of adjacent properties, rather than in distant owners, who have no incentive to keep them up, the concern of the state and other political units as to who shall determine and pay for improvements, prevention of disputes regarding precise boundaries, and the embarrassment and confusion which would prevail if a different rule existed. The rule is the same whether applied to the streets of a city or to the highways in the country.'"

*Jones,* 59 So.2d at 544–45. The court fails to perceive a basis for applying a different rule solely on the basis that the survey plat reflects a boundary that runs along the rail line, rather than running along the center of the rail line, or on the basis that the description is by metes and bounds and courses and distances. The fact is, the land, as described, does border a railroad easement and there is no clear statement or other indication of intent that title will not extend to the center line of the railroad corridor. These plaintiffs, therefore, do not lack standing on this basis.

Some of them do, however, lack standing on another basis, namely, that the fiber optic cable in dispute is not located on their property, but rather is located on the opposite side of the corridor from that on which their property is situated. This applies to the Hibernia Hills Subdivision plaintiffs (Bratton, Brice, Cromwell, Delegram, Epps, Paden, Sanders, Sherrod and Wilson), and to Leon Ghetti. In response to KCS's argument on this point, plaintiffs first argue that in view of the nature and bases of their claims, it makes no difference whether the subject fiber optic cable has been laid on the opposite side of the center line from the side on which they own the property, but that plainly is not the case.[5]

Plaintiffs further argue that while KCS has identified the location of fiber optic cables laid by IFN, it has provided no proof as to the location of cable laid by AT & T Communications, despite evidence in the record that payment was received from AT & T for a non-exclusive fiber-optic easement along the subject rail corridor. Plaintiffs thus conclude that there is no way to determine if there is fiber optic cable on the side of the railroad corridor which they own. However, the fact is that in the face of KCS's properly supported motion, it is plaintiffs' burden to demonstrate that there exists a genuine issue of material fact as to their standing, which they cannot sustain merely by suggesting the possibility that cable may have been laid on their property. In any event, though, KCS has produced evidence along with its rebuttal to show that the IFN cable is the only cable installed on the rail corridor relevant to plaintiffs' claims. Accordingly, the claims of these plaintiffs will be dismissed.

■ Plaintiff Mary Moffett owns property adjoining a portion of the rail corridor in

---

5. Plaintiffs note that in their complaint, they seek a determination of a number of questions, including:

—Does KCS Railroad and/or Illinois Central have a right of way across or abutting Plaintiffs' real property?
—Does any such right authorize KCS Railroad and/or Illinois Central to allow, construct, install and/or maintain fiber optic cable and/or conduits on Plaintiffs' real property?
—Did KCS Railroad and/or Illinois Central construct, install and/or maintain fiber optic cable on Plaintiffs' real property?
—Have defendants been unjustly enriched by constructing, installing, maintaining and/or utilizing fiber optic cable and/or conduits on Plaintiffs' real property?

Yet the very argument that these are the relevant inquiries confirms that ownership of the property on which the disputed fiber optic cable is laid is the key to defendants' potential liability, for every question which plaintiffs contend is relevant concerns what has occurred or may be proposed to occur "on Plaintiffs' real property."

which KCS claims its interest pursuant to a conveyance to its predecessors in title by an instrument reciting that the grantor did

> release relinquish grant bargain sell and convey unto ... fifty feet wide across land ... that leads from Vicksburg to Ramon ... which is or may be necessary or useful to the said Company in the construction, use and preservation of the Rail Road from Vicksburg to Jackson.

KCS submits that the form and language of conveyance is substantively identical to that at issue in *Mashburn, supra,* and that in keeping with the holding in *Mashburn,* it follows that it owns fee simple title to the portion of the rail corridor which abuts Moffett's property. Plaintiffs, on the other hand, claim that the language of this conveyance is distinguishable from that utilized in the instrument at issue in *Mashburn* in that this instrument refers to "fifty feet wide *across* land" (emphasis added). In other words, they suggest that the use of the term "across" is indicative of an intent to convey a mere easement rather than an intent to convey fee simple title, or is at least ambiguous, and hence must be construed against the drafter, i.e., the Railroad Company. The court finds no merit in plaintiffs' position.

In the court's opinion, the use of the word "across" in reference to the land being conveyed is hardly significant and does not indicate that a conveyance of a fee simple estate was not intended. *See Mississippi Cent. R. Co. v. Ratcliff,* 214 Miss. 674, 59 So.2d 311 (1952) ("A grant or conveyance to a railroad company which has power to acquire by purchase such real estate as may be necessary for the construction and operation of its road, and to take a fee-simple title thereto, will be held to convey a fee-simple title in the land and not a mere easement where such appears to be the intention of the parties as gathered from the entire instrument, particularly where the conveyance is in the usual form of a general warranty, or quitclaim deed, without any words of limitation or restriction and without purporting to convey a mere right of way....") (citation omitted). In fact, in *Ratcliff,* the court held that a fee estate was conveyed even where the deed referred to the conveyance of a "tract or right of way." The court concluded that "[t]he words 'right of way' following the word 'tract' were manifestly used as synonymous with tract." *Id.,* 59 So.2d at 314. Certainly, if the use of the words "right of way" would not be considered to convey a mere right of way easement, the use of the word "across" could not be said to have clearly intended that effect. As for plaintiffs' argument that any ambiguity in the deed is to be construed against the drafter, it is clear that this rule, which is the usual rule in the case of contract construction, has no applicability here, where the rule is, instead, that "in construing a deed to determine whether it conveys a fee or a less estate, if the language of the deed is ambiguous and uncertain as to the estate intended to be conveyed, it will be construed to pass a fee rather than a less estate." *Id.* at 315.

■ From the foregoing, the court concludes that summary judgment should be granted as to the claims of all but the following plaintiffs: Thomas and Michelle Cleveland and E.L. Pennebaker. Having concluded its consideration of the pending motions for summary judgment, the court turns to plaintiffs' motion for class certification. It is apparent to the court, particularly in the light of the individualized nature of the inquiry that was necessitated by its consideration of the summary judgment motions, that a class may not properly be certified in this case consistent with the requirements of Rule 23.

As noted by defendants, "[i]t is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir.1970). "The inquiry is whether 'it is administratively feasible for the court to determine whether a particular individual is a member,'" *McGuire v. International Paper Co.,* 1994 WL 261360, *3 (S.D.Miss.1994) (quoting 7A Wright, Miller & Kane, *Federal Practice and Procedure Civil 2d* § 1760, at 121 (1986)), which "requires that the class be defined 'in objective terms that are capable of present ascertainment,'" *id.* (quoting *Manual for Complex Litigation 2d* § 30.14, at 213 (1985)). Moreover, where, as here, plaintiffs seek certification under Rule

23(b)(3), they must demonstrate that common issues predominate over individual issues and that class treatment is the superior method of adjudication of the controversy.

Here, it has become manifest from the court's consideration of the summary judgment motions that there are an abundance of individualized issues involved in determining the nature of the interest owned by the railroad in each parcel of land comprising the railroad corridor in question and ascertaining who owns any interest in the corridor not owned by the railroad in fee. These determinations alone—which go in the first instance only to the question whether a particular person even qualifies for class membership—would require individualized review of thousands of title documents containing differing and diverse conveyance language that would have to be analyzed according to the specific language used and applicable case law to ascertain the intention of the parties to the conveyances and the legal effect of the instruments. Beyond that, even if a person were found to qualify for class membership, defendants point out that there would remain issues of whether the claims of particular class members are barred by the passage of time or the prior trespass doctrine, which, again, involve highly individualized inquiries. For these reasons, this court, consistent with virtually every other court to have considered the availability of class certification in similar cases,[6] concludes that plaintiffs' motion for class certification is due to be denied.[7]

From the fact that plaintiffs' motion for class certification will be denied, it follows that the motion of the Sprint defendants for certification of a plaintiff/counter-defendant class should also be denied.

Based on the foregoing, it is ordered that defendants' motions for summary judgment are granted as to the claims of all plaintiffs except Thomas and Michelle Cleveland and E.L. Pennebaker; that plaintiffs' motion for class certification is denied; that IFN's motion for class certification is denied; and that all other motions reflected as currently pending are denied as moot.

---

6. *See Isaacs v. Sprint Corp.*, 261 F.3d 679, 682 (7th Cir.2001); *Kirkman v. North Carolina R. Co.*, 220 F.R.D. 49 (M.D.N.C.2004); *Ostler v. Level 3 Communications, Inc.*, Case No. OP 00–0718–C H H/K, 2002 WL 31040337 (S.D.Ind. Aug. 27, 2002); *Hebert v. Doyle Land Service, Inc.*, Case No. 2:00CV1851 (W.D.La. March 5, 2002); *Nudell v. The Burlington Northern and Sante Fe Railroad Co.*, Case No. A3–01–41 (D.N.D. Nov.6, 2002); *Oxford v. Williams Cos., Inc.*, 137 F.Supp.2d 756 (E.D.Tex.2001); *Chambers v. Worldcom Network Services, Inc.*, Case No. 00–C–348–C (W.D.Wis. March 2, 2001); *Chambers v. Sprint Corp.*, Case No. 00–C–349–C (W.D.Wis. March 2, 2001); *Nicodemus v. Union Pacific Corp.*, 204 F.R.D. 479 (D.Wyo.2001); *Hallaba v. Worldcom Network Services, Inc.*, 196 F.R.D. 630 (N.D.Okla.2000); *Smith v. MCI WorldCom, Inc.*, Case No. 99–CV–681–H (N.D.Okla. March 31,

2000); *Gipson v. Sprint Communications Co., L.P.*, 81 P.3d 65 (Okla.Ct.App.2003); *Schweizer v. Level 3 Communications, Inc.*, Case No. 99 CV 1323 (Colo.Dist.Ct. Nov. 25, 2002).

7. *Fisher v. Virginia Electric & Power Co.*, 217 F.R.D. 201 (E.D.Va.2003), one case in which class certification was granted, is the case upon which plaintiffs principally rely. *Fisher*, however, is readily distinguishable. There, unlike here, the "easements [were] the product of a limited set of substantially similar conveyances," *id.* at 215–16, so that "determining the relevant property interest [would] require analysis of only a limited array of easement language and the vast majority of the conveyances at issue contain[ed] substantially similar language," *id.* at 217.