United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 21, 2006**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 05-60372

PERCY JOHNSON, Etc, ET AL

       Plaintiffs

PERCY JOHNSON, all others similarly situated; L C BRATTON, JR;
LEON V GHETTI, JR

       Plaintiffs - Counter Defendants -
       Cross-Appellees

E L PENNBAKER; MICHELLE CLEVELAND; THOMAS CLEVELAND

       Plaintiffs - Counter Defendants -
       Appellants-Cross-Appellees

  v.

KANSAS CITY SOUTHERN RAILWAY COMPANY, ET AL

       Defendants,

KANSAS CITY SOUTHERN RAILWAY COMPANY

       Defendant - Appellee -Cross-Appellee

ILLINOIS CENTRAL RAILROAD

       Defendant - Appellee

INTERSTATE FIBERNET INC

       Defendant - Counter Claimant -
       Appellee-Cross-Appellants

Appeals from the United States District Court
for the Southern District of Mississippi
(03-CV-360)

Before GARZA, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

Plaintiffs/appellants, Percy Johnson et al., appeal the district court's summary-judgment rulings to this court; both plaintiffs and a defendant, Interstate FiberNet ("IFN"), appeal the district court's certification ruling. For the following reasons, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1833, the Mississippi legislature incorporated the Commercial and Railroad Bank of Vicksburg ("Railroad Bank") for the purpose of building a railroad between Vicksburg and Jackson, Mississippi. The Railroad Bank is Illinois Central Railroad's ("IC") and subsequently Kansas City Southern Railway's ("KCS") predecessor in interest. In its initial charter, the Railroad Bank was directed to purchase or otherwise acquire needed lands in "fee simple." If the railroad was unable to acquire land by purchase, the charter allowed it to seek condemnation. The lands were acquired (although not always in fee simple), and the railroad was built. Questions still remain, however, regarding the extent to which the charter was determinative of the railroads' rights.

Twenty-seven plaintiffs filed a class action suit for damages against KCS, its predecessor in interest, IC, and various telecommunications companies alleging that the telecommunications

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

companies, by permission of the railroads, illegally placed fiber optic cables on their land. Before the district court ruled on the certification issue, KCS and IC moved for summary judgment, producing documents showing that KCS owned the land. IFN, along with many of the other telecommunications companies, then counterclaimed seeking class certification based on Federal Rules of Civil Procedure 23(b)(1) and (b)(2) so that the district court's summary judgment ruling would apply class-wide.

The district court eventually granted summary judgment for the railroads in regard to all plaintiffs except E.L. Pennebaker (holding later that Pennebaker's claims were barred by the Mississippi three-year statute of limitations for general torts), denied plaintiffs' class certification request, and denied IFN's counterclaim. The Clevelands, Pennebakers, and IFN appeal the summary judgment ruling.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002). Summary judgment is appropriate "only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Id.* (citing FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

As to class certification, this court reviews a district court's decision for abuse of discretion. *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129 (5th Cir. 2005). "'Whether the district court applied the correct legal standard in reaching its decision on class certification, however, is a legal question that we review de novo.'" *Id.* (quoting *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001)).

3

## III. DISCUSSION

A.      <u>Summary Judgment</u>

The district court dismissed the Clevelands' and Pennebakers' claims and found that the wires were placed on portions of the land that were owned by the railroads. We affirm.

The Mississippi Supreme Court has held that while the Railroad Bank's charter is important, it is not determinative when deciding the railroads' rights. *Alabama & V. R. Co. v. Mashburn*, 109 So. 2d 533 (Miss. 1959). Therefore, we must also rely on any relevant deeds while giving "great weight" to the charter. *Id*. at 535. This is important because in many instances while acquiring land for the railroad the Railroad Bank acquired only an easement.

Thomas and Michelle Cleveland argue that their predecessor conveyed only an easement to the Railroad Bank; however, the original 1837 deed, which reads "I . . . have this day released, relinquished, and sold and do by these presents release, relinquish, grant, bargain, sell and convey," appears to suggest otherwise. Under Mississippi law, where a deed is ambiguous as to whether it conveys a fee or lesser estate, it will be interpreted to convey a fee estate. *Id*. at 315.

Many plaintiffs did argue correctly that they own a portion of the railroad corridor. Mississippi law is clear in that conveyances of land "bordering a stream, street, railroad easement or highway carry title to the center line thereof in the absence of a clear statement to the contrary." *Percy Johnson, et al., v. Kansas City Southern*, 224 F.R.D. 382, 386 (S. D. Miss. 2004). These plaintiffs were incorrect, however, in asserting that telecommunications lines were placed on their property. The defendants presented evidence that all lines that were placed on portions of the railroad corridor jointly owned with abutting property owners were placed on the one-half wholly owned and controlled by the railroads and no evidence was presented to the contrary

4

We likewise affirm the district court in regard to plaintiff Pennebaker's claims. Pennebaker is barred by the Mississippi statute of limitations. Pennebaker witnessed the installation of the lines in the early 1990s, more than ten years before he filed suit. Mississippi has a three-year statute of limitations for tort claims unless state law provides otherwise. *See* MISS. CODE ANN. § 15-1-49 (2006). There are no special trespass, conversion or unjust enrichment statutes, all of which are claims that Pennebaker raised in district court. Thus, the general three-year statute of limitations applies. The adverse possession statute does not apply here because it applies only to parties seeking to obtain land by adverse possession, not to parties seeking damages. *Id*. at § 15-1-13. Even though he tries, Pennebaker cannot claim he lacked notice because he witnessed technicians installing the lines.

Thus, the district court properly dismissed the Clevelands' and Pennebakers' claims.

B.     Class Certification

Plaintiffs, and one defendant, argue that the district court abused its discretion when denying class certification. We affirm.

There are essentially two separate types of class action suits, mandatory non-opt-out classes under 23(b)(1) or 23(b)(2) and discretionary opt-out classes under 23(b)(3). Both types must meet the four requirements under 23(a) as a prerequisite for all class actions. *See* FED. R. CIV. P. 23.

Plaintiffs sought class certification under 23(b)(3), which means that they must demonstrate that it would be more convenient or more efficient for the court to adjudicate all claims together. The plaintiffs must also demonstrate that common issues "predominate" over individual ones. The plaintiffs have not shown that class certification is proper. Even within this appeal, it is clear that the plaintiffs' individual issues, e.g., statute of limitations, deed interpretation and center-line theory, predominate over the common ones. The one case upon which plaintiffs rely where certification was

5

granted, *Fisher v. Virginia Electric & Power Co.*, 217 F.R.D. 201 (E. D. Va. 2003), is distinguishable because that case involved a set of nearly identical conveyances.

C.     IFN Class Certification

Unlike plaintiffs, IFN, a telecommunications company given permission by the railroads to install fiber optic cable along the corridor, sought a (b)(1) or (b)(2) non-opt out class certification. IFN seeks to bar all property owners with land abutting the railroad corridor from bringing claims in the future.  Assuming IFN meets the four 23(a) requirements, their argument does find limited support in (b)(1)(B), which allows the certification of non-opt out classes when there is a risk of adjudications that would be dispositive as to claims of those not a party to the action.   Class certification is nevertheless improper because it does not meet Rule 23(a)'s typicality requirement. The issues are far too individualized for the court to bind all landowners along the corridor.  This is not a situation involving a single landowner facing multiple nuisance claims arising from the same actions on the same parcel of land.  The situation here involves a vast stretch of land and a multitude of property owners, each with individual conveyances stating different things.

Additionally, it is unclear whether IFN even has standing.  They have not demonstrated a real threat of future harm in the form of lawsuits brought by other landowners along the corridor.  To have Article III standing, a plaintiff must show  "1) that the plaintiff ha[s] suffered an 'injury in fact--an invasion of a legally  protected interest which is (a) concrete and particularized, and (b) actual or imminent'; (2) that there is 'a causal connection between the injury and the conduct complained of'; and (3) that the injury is likely to be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61(1992) (citations omitted).

Assuming that there is standing, IFN could seek declaratory relief.  "In a case of actual

6

controversy within its jurisdiction, 'the Declaratory Judgment Act allows a federal court to 'declare the rights and other legal relations of any interested party seeking such declaration.' 28 U.S.C. § 2201. This circuit interprets the § 2201 'case of actual controversy' requirement to be coterminous with Article III's 'case or controversy' requirement." *Hosein v. Gonzales*, 452 F.3d 401, 404 (5th Cir. 2006); *see Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997).

In response, IFN argues that obtaining satisfactory relief using the Declaratory Judgment Act would require it to seek a declaratory judgment for each and every owner along the corridor. If this is indeed true then it points precisely to the reasons why a non-opt-out class certification would also be improper.[1]

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grants of summary judgment and denial of the motion for class certification.

AFFIRMED.

---

[1]Thus, there is no need for us to reach IFN's arguments in regard to the Telecommunications Act of 1996, 47 U.S.C. § 253(a).