# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2022 Term

_____

No. 21-0737

_____

**FILED**

**April 26, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL.
WEST VIRGINIA UNIVERSITY HOSPITALS, INC.; AND
WEST VIRGINIA UNITED HEALTH SYSTEM, INC.,
d/b/a WVU HEALTHCARE,
Petitioners,

V.

THE HONORABLE PHILLIP D. GAUJOT,
JUDGE OF THE CIRCUIT COURT OF MONONGALIA COUNTY;
CHRISTOPHER THOMACK; AND JOSEPH MICHAEL JENKINS,
Respondents.

_____

PETITION FOR WRIT OF PROHIBITION

WRIT DENIED

_____

Submitted: March 2, 2022
Filed: April 26, 2022

Marc E. Williams
Robert L. Massie
Jennifer W. Winkler
Nelson Mullins Riley & Scarborough, LLP
Huntington, West Virginia
Christine S. Vaglienti
West Virginia University Hospitals, Inc.
Morgantown, West Virginia
Attorneys for the Petitioners

Mychal S. Schulz

Christopher J. Regan
Bordas & Bordas, PLLC
Wheeling, West Virginia
David J. Romano
Jennifer L. Finch
Romano Law Offices
Clarksburg, West Virginia
David E. Goddard
Edmund L. Wagoner
Goddard & Wagoner
Clarksburg, West Virginia

Babst Calland
Charleston, West Virginia

Todd A. Mount
Shaffer & Shaffer, PLLC
Madison, West Virginia
Attorneys for Amicus Curiae,
Defense Trial Counsel of
West Virginia

Attorneys for the Respondents

Anthony J. Majestro
Powell & Majestro PLLC
Charleston, West Virginia
Attorney for Amicus Curiae,
West Virginia Association for
Justice

JUSTICE MOATS delivered the Opinion of the Court.

JUSTICE WALKER, deeming herself disqualified, did not participate.

JUSTICE ALAN D. MOATS, sitting by temporary assignment.

JUDGE STACY L. NOWICKI-ELDRIDGE, sitting by temporary assignment.

JUSTICE ARMSTEAD concurs, in part, dissents, in part, and reserves the right to file a separate opinion.

**SYLLABUS BY THE COURT**

1.     "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court.  It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers.  *W. Va. Code*, 53-1-1."  Syllabus point 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

2.     "When a circuit court fails or refuses to obey or give effect to the mandate of this Court, misconstrues it, or acts beyond its province in carrying it out, the writ of prohibition is an appropriate means of enforcing compliance with the mandate." Syllabus point 5, *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W. Va. 802, 591 S.E.2d 728 (2003).

3.     "A circuit court's interpretation of a mandate of this Court and whether the circuit court complied with such mandate are questions of law that are reviewed *de novo*."  Syllabus point 4, *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W. Va. 802, 591 S.E.2d 728 (2003).

4.     "Before certifying a class under Rule 23 of the *West Virginia Rules of Civil Procedure* [2017], a circuit court must determine that the party seeking class

certification has satisfied all four prerequisites contained in Rule 23(a)–numerosity, commonality, typicality, and adequacy of representation–and has satisfied one of the three subdivisions of Rule 23(b).  As long as these prerequisites to class certification are met, a case should be allowed to proceed on behalf of the class proposed by the party."  Syllabus point 8, *In re West Virginia Rezulin Litigation*, 214 W. Va. 52, 585 S.E.2d 52 (2003).

5.    "A class action may only be certified if the trial court is satisfied, after a thorough analysis, that the prerequisites of Rule 23(a) of the West Virginia Rules of Civil Procedure have been satisfied.  Further, the class certification order should be detailed and specific in showing the rule basis for the certification and the relevant facts supporting the legal conclusions."  Syllabus point 8, *State ex rel. Chemtall Inc. v. Madden*, 216 W. Va. 443, 607 S.E.2d 772 (2004).

6.    "The 'commonality' requirement of Rule 23(a)(2) of the *West Virginia Rules of Civil Procedure* [2017] requires that the party seeking class certification show that 'there are questions of law or fact common to the class.'  A common nucleus of operative fact or law is usually enough to satisfy the commonality requirement.  The threshold of 'commonality' is not high, and requires only that the resolution of common questions affect all or a substantial number of the class members."  Syllabus point 11, *In re West Virginia Rezulin Litigation*, 214 W. Va. 52, 585 S.E.2d 52 (2003).

7. "For purposes of Rule 23(a)(2) of the *West Virginia Rules of Civil Procedure* [2017], 'a "question" "common to the class" must be a *dispute*, either of fact or of law, *the resolution of which* will advance the determination of the class members' claims.' *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369, 131 S. Ct. 2541, 2562, 180 L. Ed. 2d 374 (2011) (Ginsburg concurring in part and dissenting in part) (emphasis added)." Syllabus point 2, *State ex rel. West Virginia University Hospitals, Inc. v. Gaujot*, 242 W. Va. 54, 829 S.E.2d 54 (2019).

8. "For commonality to exist under Rule 23(a)(2) of the *West Virginia Rules of Civil Procedure* [2017], class members' 'claims must depend upon a common contention[,]' and that contention 'must be of such a nature that it is capable of classwide resolution[.]' *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). In other words, the issue of law (or fact) in question must be one whose '*determination* . . . will resolve an issue that is central to the validity of each one of the claims in one stroke.' *Id.* (emphasis added)." Syllabus point 3, *State ex rel. West Virginia University Hospitals, Inc. v. Gaujot*, 242 W. Va. 54, 829 S.E.2d 54 (2019).

9. "Before certifying a class pursuant to Rule 23 of the West Virginia Rules of Civil Procedure, it is imperative that the class be identified with sufficient specificity so that it is administratively feasible for the court to ascertain whether a

particular individual is a member." Syllabus point 3, *State ex rel. Metropolitan Life Insurance Co. v. Starcher*, 196 W. Va. 519, 474 S.E.2d 186 (1996).

10. "To demonstrate the existence of a class pursuant to Rule 23 of the West Virginia Rules of Civil Procedure, it is not required that each class member be identified, but only that the class can be objectively defined. It is not a proper objection to certification that the class as defined may include some members who do not have claims because certification is conditional and may be altered, expanded, subdivided, or vacated as the case progresses toward resolution on the merits." Syllabus point 2, *State ex rel. Metropolitan Life Insurance Co. v. Starcher*, 196 W. Va. 519, 474 S.E.2d 186 (1996).

11. "When this Court remands a case to the circuit court, the remand can be either general or limited in scope. Limited remands explicitly outline the issues to be addressed by the circuit court and create a narrow framework within which the circuit court must operate. General remands, in contrast, give circuit courts authority to address all matters as long as remaining consistent with the remand." Syllabus point 2, *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W. Va. 802, 591 S.E.2d 728 (2003).

12. "Upon remand of a case for further proceedings after a decision by this Court, the circuit court must proceed in accordance with the mandate and the law of the case as established on appeal. The trial court must implement both the letter and the

spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." Syllabus point 3, *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W. Va. 802, 591 S.E.2d 728 (2003).

**Moats, Justice:**

For the third time, the petitioners, West Virginia University Hospitals, Inc., and West Virginia United Health System, Inc., d/b/a WVU Healthcare (collectively "WVU Hospitals"), seek to invoke the original jurisdiction of this Court to obtain an extraordinary writ of prohibition in relation to class action litigation filed by respondents, Christopher Thomack and Joseph Michael Jenkins (collectively "Class Representatives"), that has been pending since 2013. This time, WVU Hospitals argue that they are entitled to prohibitory relief because the circuit court failed to follow the express mandate of this Court as set forth in *State ex rel. West Virginia University Hospitals, Inc. v. Gaujot*, 242 W. Va. 54, 829 S.E.2d 54 (2019). Specifically, WVU Hospitals claim that the circuit court violated this Court's mandate by failing to conduct a sufficiently thorough analysis of the commonality, ascertainability, and predominance factors required for class certification under Rule 23 of the West Virginia Rules of Civil Procedure. Additionally, WVU Hospitals contend that the circuit court failed to give careful consideration to ethical issues pertaining to the inclusion of lawyers within the class definition, also in violation of this Court's mandate. After considering the briefs and oral arguments of the parties, the briefs of amici curiae,[1]

---

[1] We recognize and appreciate the participation in this case of the Defense Trial Counsel of West Virginia, who filed an amicus curiae brief in support of the petitioners, West Virginia University Hospitals, and The West Virginia Association for Justice, who filed an amicus curiae brief in support of the respondent, Judge Phillip D. Gaujot. We have considered the arguments presented by these amici curiae in deciding this case.

1

the appendix record for this matter, and relevant legal precedent, we find no inadequacy in the circuit court's findings of commonality and ascertainability. We further conclude that the circuit court was under no obligation to revisit its predominance analysis or the class definition under this Court's prior mandate. Accordingly, we deny the requested writ of prohibition.

## I.

### FACTUAL AND PROCEDURAL HISTORY

This case has followed a tortured path. Class Representatives Mr. Thomack and Mr. Jenkins were each injured in unrelated accidents in 2012 and received treatment at Ruby Memorial Hospital ("Ruby") in Morgantown, West Virginia. Ruby is under the umbrella of Petitioners, WVU Hospitals. Then, in anticipation of litigation to recover damages for their accident-related injuries, Messrs. Thomack and Jenkins each sought, through their separate counsel, a copy of medical records documenting their respective stays at Ruby. Mr. Thomack alleges that he was required to pay $514.40 for a computer disc containing copies of his already-existing computerized medical records. Mr. Jenkins similarly avers that he was required to pay $656.80 for a computer disc containing copies of his already-existing computerized medical records. It is further alleged that WVU Hospitals arrived at these amounts by charging forty cents per page for copies of already

2

existing medical records, regardless of whether they were produced in paper or electronic form, along with a ten-dollar search fee.

Based on the theory that the fees charged by WVU Hospitals violated West Virginia Code § 16-29-2(a) (eff. 1999), Mr. Thomack first asserted his claims against WVU Hospitals over nine years ago, in January 2013. Mr. Jenkins followed shortly thereafter, filing his claims in June 2013. The cases were consolidated, and Messrs. Thomack and Jenkins filed their "Consolidated Amended Complaint" asserting a putative class action on January 9, 2014. After the circuit court entered an order granting class certification, WVU Hospitals filed their first petition seeking a writ of prohibition in this Court on June 25, 2014. The petition was refused in an unpublished order. *State ex rel. WVU Hospitals v. Gaujot*, No. 14-0611 (W. Va. filed August 26, 2014) ("*Gaujot I*"). More than two-and-a-half years after the writ of prohibition was refused in *Gaujot I*, this Court handed down its decision in *State ex rel. Healthport Technologies, LLC v. Stucky*, 239 W. Va. 239, 800 S.E.2d 506 (2017), which found that a patient lacked standing to pursue a claim against a medical provider for allegedly excessive charges when those charges were paid solely by the patient's lawyer. Relying on *Healthport*, WVU Hospitals filed a motion in the circuit court to decertify the class. The motion was denied, and on July 5, 2018, the circuit court entered an order amending the class definition as follows to comport with the *Healthport* decision:

Any person, who, from January 18, 2008[,] until June 5, 2014,

3

(1) requested in writing copies of patient medical records from Defendant, West Virginia University Hospitals, Inc., including the individual patient and any person who was an authorized agent or authorized representative of the patient through legal representation;

and

(2) paid the fees charged by the Defendant to obtain such requested medical records.

WVU Hospitals then filed their second petition for writ of prohibition on October 1, 2018, and asked this Court "to prohibit [the circuit court judge] from conducting any further proceedings until he has vacated his order denying their motion to decertify the class." *State ex rel. W. Va. Univ. Hosps., Inc. v. Gaujot*, 242 W. Va. 54, 57, 829 S.E.2d 54, 57 (2019) ("*Gaujot II*"). WVU Hospitals argued in *Gaujot II* that the class was improperly certified because the features of commonality and ascertainability required by Rule 23 of the West Virginia Rules of Civil Procedure were absent, and the class included people who lacked standing. Addressing only commonality, the *Gaujot II* Court granted the writ of prohibition as moulded, and vacated the circuit court's order denying WVU Hospitals' motion to decertify the class.[2]

---

[2] The Court commented, "[b]ecause we grant the writ as moulded and vacate the circuit court's order, we need not consider the Hospitals' other grounds for seeking a writ of prohibition." *State ex rel. W. Va. Univ. Hosps., Inc. v. Gaujot*, 242 W. Va. 54, 64, 829 S.E.2d 54, 64 (2019).

4

Following this Court's remand, additional discovery was conducted. WVU Hospitals then filed a renewed motion to decertify the class, which the circuit court denied. However, in response to comments made in *Gaujot II* regarding the inclusion of certain lawyers in the certified class, the court redefined the class as follows:

> Any person, who, from January 18, 2008[,] until June 5, 2014,
>
> (1)     requested in writing copies of patient medical records from Defendant, West Virginia University Hospitals, Inc., including the patient or any person who was an authorized agent or authorized representative of the patient; and
>
> (2)     paid the fees charged by the Defendant to obtain such requested medical records; and
>
> (3)     provided however, that attorneys who paid for a client's medical records in connection with investigation of claims and/or litigation on behalf of that client, but were never repaid for those costs, are specifically excluded from class membership.

Thereafter, WVU Hospitals filed a motion under Rule 60(b) of the West Virginia Rules of Civil Procedure asking the circuit court to reconsider its ruling. The circuit court also denied the Rule 60(b) motion, and WVU Hospitals filed their third petition for writ of prohibition, alleging that the circuit court failed to follow the express mandate of this Court set forth in *Gaujot II*. We issued a rule to show cause, and for the reasons explained below, we deny the requested writ.

5

## II.

## STANDARD FOR ISSUANCE OF WRIT

It has long been established that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W. Va. Code*, 53-1-1." Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977). Here, WVU Hospitals effectively claim that the circuit court exceeded its legitimate powers.

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

6

In this original jurisdiction proceeding, WVU Hospitals argue that the circuit court failed to comply with the express mandate issued by this Court in *Gaujot II*. A petition for writ of prohibition is an appropriate means of bringing this issue to the Court. "When a circuit court fails or refuses to obey or give effect to the mandate of this Court, misconstrues it, or acts beyond its province in carrying it out, the writ of prohibition is an appropriate means of enforcing compliance with the mandate." Syl. pt. 5, *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W. Va. 802, 591 S.E.2d 728 (2003). Our review of whether the circuit court complied with a mandate of this Court is de novo. "A circuit court's interpretation of a mandate of this Court and whether the circuit court complied with such mandate are questions of law that are reviewed *de novo*." Syl. pt. 4, *id.*

However, we remain mindful that "[t]his Court is restrictive in the use of prohibition as a remedy." S*tate ex rel. W. Va. Fire & Cas. Co. v. Karl*, 199 W. Va. 678, 683, 487 S.E.2d 336, 341 (1997).

> We limit our exercise of original jurisdiction because "'"'[m]andamus, prohibition and injunction against judges are drastic and extraordinary remedies . . . . As extraordinary remedies, they are reserved for really extraordinary causes.'"'" *State ex rel. United States Fidelity & Guar. Co. v. Canady*, 194 W. Va. 431, 436, 460 S.E.2d 677, 682 (1995), quoting *State ex rel. Doe v. Troisi*, 194 W. Va. [28,] 31, 459 S.E.2d [139,] 142 [(1995)], quoting *Ex parte Collett*, 337 U.S. 55, 72, 69 S. Ct. 944, 953, 93 L. Ed. 1207, 1217 (1949), quoting *Ex parte Fahey*, 332 U.S. 258, 259-60, 67 S. Ct. 1558, 1559, 91 L. Ed. 2041, 2043 (1947).

7

*State ex rel. Suriano v. Gaughan*, 198 W. Va. 339, 345, 480 S.E.2d 548, 554 (1996).

Guided by these various standards, we will address the issues raised by WVU Hospitals.

## III.

## DISCUSSION

In this original jurisdiction proceeding, WVU Hospitals contend that a writ of prohibition is warranted because the trial court defied this Court's mandate issued in *Gaujot II* by failing to conduct a sufficiently thorough analysis of the requirements for class certification and failing to comply with the law of the case. It is well settled that

> [b]efore certifying a class under Rule 23 of the *West Virginia Rules of Civil Procedure* [2017], a circuit court must determine that the party seeking class certification has satisfied all four prerequisites contained in Rule 23(a)–numerosity, commonality, typicality, and adequacy of representation–and has satisfied one of the three subdivisions of Rule 23(b). As long as these prerequisites to class certification are met, a case should be allowed to proceed on behalf of the class proposed by the party.

Syl. pt. 8, *In re W. Va. Rezulin Litig.*, 214 W. Va. 52, 585 S.E.2d 52 (2003). Likewise, this Court has made clear that

> [a] class action may only be certified if the trial court is satisfied, after a thorough analysis, that the prerequisites of Rule 23(a) of the West Virginia Rules of Civil Procedure have been satisfied. Further, the class certification order should be detailed and specific in showing the rule basis for the certification and the relevant facts supporting the legal conclusions.

8

Syl. pt. 8, *State of W. Va. ex rel. Chemtall Inc. v. Madden*, 216 W. Va. 443, 607 S.E.2d 772 (2004). In support of their petition seeking a writ of prohibition, WVU Hospitals raise four specific areas in which they contend the circuit court did not follow the mandate from *Gaujot II*. First, they claim that the circuit court inadequately analyzed the commonality requirement for class certification. Next, WVU Hospitals argue that the circuit court failed to conduct a thorough analysis of the ascertainability requirement for class certification. Additionally, they assert that the circuit court failed to comply with the requirements set out in *State ex rel. Surnaik Holdings of WV, LLC v. Bedell*, 244 W. Va. 248, 852 S.E.2d 748 (2020), in analyzing the predominance factor for class certification. Finally, WVU Hospitals maintain that the circuit court failed to give careful consideration to the inclusion of attorneys as class members as required by the mandate in *Gaujot II*. We address each of these issues in turn.

### A. Commonality

In *Gaujot II*, this Court observed that, before the circuit court, WVU Hospitals had

> repeatedly challenged Mr. Thomack and Mr. Jenkins's claim that commonality could be found in the Hospitals' uniform charging practices and in the Hospitals' alleged violation of W. Va. Code § 16-29-2(a) [1999]. Yet the circuit court persisted in finding commonality without ever truly addressing the Hospitals' arguments or indicating with clarity the rationale for such findings.

9

242 W. Va. at 64, 829 S.E.2d at 64. Accordingly, in granting the requested writ of prohibition as moulded, the Court vacated the circuit court's order denying WVU Hospitals' motion to decertify the class and urged the circuit court to, upon remand, "determine whether the requirements of Rule 23, *particularly as they relate to commonality*, have been met[.]" 242 W. Va. at 64, 829 S.E.2d at 64 (emphasis added).

Following this Court's remand, the circuit court revisited commonality in its October 30, 2020 "Order Denying Defendants' Renewed Motion to Decertify Class" as follows:

13. Based upon the evidence presented from the deposition testimony of WVUHS's Rule 30(b)(7) witness, Christine Matheny, and [their] Director of Health Information Management for West Virginia University Hospitals, Melissa Martin (who signed the affidavit relied upon by the WVSCA), it appears that evidence exists to establish that the average cost of the reasonable expenses incurred in producing medical records for the period of June 6, 2014 through July 31, 2014 is transferrable to the class time period.

14. The average cost for each medical record request fulfilled for the time period of June 6, 2014 through July 31, 2014 was $2.08.

15. Based upon that average cost of $2.08 per request fulfilled, and further considering WVUHS' admission that [they] never attempted to charge only the fees necessary to reimburse [them] for [their] reasonable costs incurred as allowed under the statute, it appears that liability may exist in this matter on a class-wide basis.

16. Based upon that average cost of $2.08 per request fulfilled, it appears that each and every requestor suffered damages based on the $10.00 search fee alone, without even considering the additional damages related to the $0.40 per page/image fee that was charged for every class member's request.

17. Based upon the evidence presented in response to Defendants' motion, it appears that "probable and inferential" evidence and "direct and positive proof" exist to allow Plaintiffs to potentially meet their burden of proof on both liability and damages on a class-wide basis, as explained in the affidavit of Plaintiffs' expert, Kathryn Crouse.

18. The Court **FINDS** that many common issues exist in this case. The statute at issue, W. Va. Code § 16-29-2, applies to govern the charges Defendants could charge to every class member. WVUHS['s] admi[ssion] that it did not attempt to compute its actual costs incurred for any member of the class is the same. The inability to go back in time to re-create the actual amount of WVUHS' actual costs incurred is the same for every member of the class. The necessity of using probable and inferential data to determine the Class Members' damages as a result of WVUHS' conduct is the same for every class member. Finally, the proposed methodology for computing damages for every class member is the same.

19. For the reasons set forth above, the Court **FINDS** that Plaintiffs have met their burden to show that "there are questions of law or fact common to the class." Syl. Pt. 11 (in part), *Rezulin*, 214 W. Va. 52, 585 S.E.2d 52.

20. Further, the Court **FINDS** that the common questions in this case establish that a jury could establish both liability and damages on a class-wide basis.

11

WVU Hospitals rely on the *Gaujot II* Court's comment that "it is not enough for Mr. Thomack and Mr. Jenkins to allege that they and others like them are victims of the same statutory violation," and argue that the circuit court erred by basing its finding of commonality for purposes of class certification solely on the violation of the statute addressing the fee that may be charged for providing copies of patient medical records. *Gaujot II*, 242 W. Va. at 62, 829 S.E.2d at 62. WVU Hospitals argue further that the circuit court erred by using an "average cost" for records based on data gathered by the Hospitals to track costs under the 2014 version of the statute when that version does not apply to the class action plaintiffs.

Class Representatives respond that factual evidence added to the record after this Court's decision in *Gaujot II* provided a sufficient basis to support commonality, and the circuit court thoroughly analyzed this evidence when it concluded there are common questions of both liability and damages in this case that can be determined on a class-wide basis. We agree.

We have held that

> [t]he "commonality" requirement of Rule 23(a)(2) of the *West Virginia Rules of Civil Procedure* [2017] requires that the party seeking class certification show that "there are questions of law or fact common to the class." A common nucleus of operative fact or law is usually enough to satisfy the commonality requirement. The threshold of "commonality" is

12

not high, and requires only that the resolution of common questions affect all or a substantial number of the class members.

Syl. pt. 11, *In re W. Va. Rezulin Litig.*, 214 W. Va. 52, 585 S.E.2d 52. *Accord Gaujot II*, 242 W. Va. 54, 62, 829 S.E.2d 54, 62 (*quoting In re W. Va. Rezulin Litig.*). In *Gaujot II*, we clarified that,

> [f]or purposes of Rule 23(a)(2) of the *West Virginia Rules of Civil Procedure* [2017], "a 'question' 'common to the class' must be a *dispute*, either of fact or of law, *the resolution of which* will advance the determination of the class members' claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369, 131 S. Ct. 2541, 2562, 180 L. Ed. 2d 374 (2011) (Ginsburg concurring in part and dissenting in part) (emphasis added).

Syl. pt. 2, *Gaujot II*, 242 W. Va. 54, 829 S.E.2d 54. Furthermore,

> [f]or commonality to exist under Rule 23(a)(2) of the *West Virginia Rules of Civil Procedure* [2017], class members' "claims must depend upon a common contention[,]" and that contention "must be of such a nature that it is capable of classwide resolution[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). In other words, the issue of law (or fact) in question must be one whose "*determination . . .* will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. (emphasis added).

Syl. pt. 3, *Gaujot II*, 242 W. Va. 54, 829 S.E.2d 54. With respect to the instant litigation, the Court commented that

> it is not enough for Mr. Thomack and Mr. Jenkins to allege that they and others like them are victims of the same statutory violation. For commonality to exist, class members' "claims must depend upon a common contention[,]" and that contention "must be of such a nature that it is capable of

13

> classwide resolution[.]" *State ex rel. Erie Ins. Prop. & Cas.*
> *Co. v. Nibert*, No. 16-0884, 2017 WL 564160, at \*6 (W. Va.
> Feb. 13, 2017) (memorandum decision) (quoting *Wal-Mart*,
> 564 U.S. at 350, 131 S. Ct. at 2551, 180 L. Ed. 2d 374).

*Gaujot II*, 242 W. Va. at 62, 829 S.E.2d at 62.

We disagree with WVU Hospitals' characterization of the circuit court's findings on commonality as based *solely* on the alleged violation of West Virginia Code § 16-29-2(a). First, we remind WVU Hospitals that, in addressing the commonality issue, the *Gaujot II* Court expressly pointed out that the circuit court had found commonality "without ever truly addressing" the Hospitals' challenge to Class Representatives' claim that "commonality could be found in the Hospitals' uniform charging practices and in the Hospitals' alleged violation of W. Va. Code § 16-29-2(a) [1999]." 242 W. Va. at 64, 829 S.E.2d at 64. Thus, it appears that the circuit court addressed exactly the issue that previously had been lacking in its commonality analysis.

The *Gaujot II* Court did comment that for purposes of commonality, "it is not enough for Mr. Thomack and Mr. Jenkins to allege that they and others like them are victims of the same statutory violation." 242 W. Va. at 62, 829 S.E.2d at 62. However, WVU Hospitals misunderstand this comment and guidance provided by *Wal-Mart Stores*. *Wal-Mart Stores* involved allegations of sex discrimination by a class of 1.5 million current or former female Wal-Mart employees. The United States Supreme Court observed that

14

"[q]uite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once." 564 U.S. at 350, 131 S. Ct. at 2551, 180 L. Ed. 2d 374. This is because,

> in resolving an individual's Title VII claim, the crux of the inquiry is "the reason for a particular employment decision," *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 876[, 104 S. Ct. 2794, 81 L. Ed. 2d 718] (1984). Here respondents wish to sue about literally millions of employment decisions at once. Without some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*.

*Id.* at 352, 131 S. Ct. at 2552, 180 L. Ed. 2d 374. The Court explained that

> "Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion [or higher pay] on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims."

*Id.* at 352-53, 131 S. Ct. at 2553, 180 L. Ed. 2d 374 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157, 102 S. Ct. 2364, 2370, 72 L. Ed. 2d 740 (1982)).

The *Falcon* Court suggested two ways to bridge the gap. One had no application in *Wal-Mart Stores*; the other required "'[s]ignificant proof that an employer

15

operated under a general policy of discrimination.'" *Id. at* 353, 131 S. Ct. at 2553, 180 L. Ed. 2d 374 (quoting *Falcon*, 457 U.S. at 159 n.15, 102 S. Ct. at 2371 n.15, 72 L. Ed. 2d 740 ). Wal-Mart had no such policy. The *Wal-Mart* Court found that "[t]he second manner of bridging the gap . . . is entirely absent here. Wal-Mart's announced policy forbids sex discrimination, . . . and as the District Court recognized the company imposes penalties for denials of equal employment opportunity[.]" *Id.* It was this lack of a general policy that prevented commonality from being established based upon the mere claim of a Title VII injury.

Unlike the facts of Wal-Mart, here it is undisputed that WVU Hospitals had an established policy of charging a per page rate of forty cents along with a ten-dollar search fee for copies of medical records. Class Representatives have alleged that WVU Hospitals systematically violated West Virginia Code § 16-29-2(a) (eff. 1999) by charging more than required to reimburse it for the reasonable expenses incurred in providing requested copies of patient records. Pursuant to West Virginia Code § 16-29-2(a),

> (a) The provider shall be *reimbursed* by the person requesting in writing a copy of the records at the time of delivery for all *reasonable expenses incurred in complying with this article*: Provided, That the cost may not exceed seventy-five cents per page for the copying of any record or records which have already been reduced to written form and a search fee may not exceed ten dollars.

16

(Emphasis added). As the circuit court found, the question of whether WVU Hospitals violated West Virginia Code § 16-29-2(a) by charging this set fee and by failing to charge only the fees necessary to reimburse them for their reasonable costs incurred is a question of liability capable of classwide resolution. The resolution of this question also will advance the determination of the class members' claims. Thus, the requirements of Syllabus points 2 and 3 of *Gaujot II* are met.

The circuit court additionally found questions of damages could be decided on a class-wide basis. After West Virginia Code § 16-29-2(a) was amended in 2014[3] to require a person requesting records to pay a reasonable cost-based fee, WVU Hospitals changed how they calculated their fee for patient records, and this change appears to have drastically reduced the amount charged for those records. Class Representatives claim,

---

[3] Under the 2014 amended version of West Virginia Code § 16-29-2(a),

> [a] person requesting records from a provider shall place the request in writing and pay a reasonable, cost-based fee, at the time of delivery. Notwithstanding any other section of the code or rule, the fee shall be based on the provider's cost of: (1) Labor for copying the requested records if in paper, or for placing the records in electronic media; (2) supplies for creating the paper copy or electronic media; and (3) postage if the person requested that the records be mailed.

W. Va. Code § 16-29-2(a) (eff. 2014). This statute has been amended two more times, in 2017 and again in 2021; however, the 2017 and 2021 versions are not pertinent to this proceeding.

17

though, that there is no tangible difference between a reimbursement of reasonable expenses, under the 1999 version of West Virginia Code § 16-29-2(a), and the reasonable cost-based fee allowed by the 2014 version. Moreover, the deposition testimony of WVU Hospitals' employee Melissa Martin, Assistant Vice President of Privacy and Health Information Management, established that, for the period between 2008 and 2014, which is the timeframe relevant to this class action, WVU Hospitals did not compute the actual cost of producing a patient record for purposes of reimbursement. Due to this lack of data to establish the actual cost of producing requested medical records during the timeframe covered in this action, the circuit court found that the common question of whether WVU Hospitals' failure to compute such costs violates West Virginia Code § 16-29-2(a) is the same for all class members, as is the resulting need to compute the actual cost using probable and inferential data extrapolated from a time study generated by WVU Hospitals. The time study was performed to create a formula for estimating the amount of time required to produce a patient record for purposes of billing under the 2014 amended version of West Virginia Code § 16-29-2(a). However, WVU Hospitals' own employee, Christine Metheny, explained in her deposition that WVU Hospitals' method of gathering patient records had not changed since July 2008; therefore, the time study calculated based upon data gathered for the time period of November 2013 through June 2014 would be applicable back to July 2008, since the same process for gathering data was being used. Based upon data from the time study, Class Representatives' expert witness was able to

18

calculate an average invoice amount of $2.08 per record request. Because WVU Hospitals'

method of gathering patient records had not changed since July 1, 2008, this average is

applicable to the time period between July 1, 2008, and June 5, 2014. Thus, WVU

Hospitals' failure to calculate their cost to produce patient records during the timeframe

relevant to this class action necessitates the use of the probable and inferential data

described above to determine the class members' damages, and this probable and

inferential data is common to all or a substantial number of the class members.

Although the *Gaujot II* Court clarified the requirements for commonality

under Rule 23(a)(2) of the West Virginia Rules of Civil Procedure, the Court reiterated that

"'[t]he threshold of "commonality" is not high, and requires only that the resolution of

common questions affect all or a substantial number of the class members.'" *Gaujot II*,

242 W. Va. at 62, 829 S.E.2d at 62 (quoting Syl. pt. 11, in part, *In re W. Va. Rezulin Litig.*,

214 W. Va. 52, 585 S.E.2d 52). The circuit court's findings sufficiently establish

commonality.

### B. Ascertainability

In *Gaujot II*, WVU Hospitals argued that the certified class lacked the feature

of ascertainability, but, having found grounds to grant the requested writ of prohibition on

the issue of commonality, the *Gaujot II* Court found no need to address ascertainability.[4]

Following our remand of the case, the circuit court re-defined the class as

> [a]ny person, who, from January 18, 2008[,] until June 5, 2014,
>
> (1) requested in writing copies of patient medical records from Defendant, West Virginia University Hospitals, Inc., including the patient or any person who was an authorized agent or authorized representative of the patient; and
>
> (2) paid the fees charged by the Defendant to obtain such requested medical records; and
>
> (3) provided however, that attorneys who paid for a client's medical records in connection with investigation of claims and/or litigation on behalf of that client, but were never repaid

---

[4] The Court may also have declined to address ascertainability because the circuit court's order of February 23, 2018, which was the subject of the petition for writ of prohibition, did not contain findings of fact and conclusions of law pertaining to ascertainability. Notably, it was WVU Hospitals' responsibility to request an order that contained adequate findings and conclusions:

> A party seeking to petition this Court for an extraordinary writ based upon a non-appealable interlocutory decision of a trial court, [sic] must request the trial court set out in an order findings of fact and conclusions of law that support and form the basis of its decision. In making the request to the trial court, counsel must inform the trial court specifically that the request is being made because counsel intends to seek an extraordinary writ to challenge the court's ruling. When such a request is made, trial courts are obligated to enter an order containing findings of fact and conclusions of law. Absent a request by the complaining party, a trial court is under no duty to set out findings of fact and conclusions of law in non-appealable interlocutory orders.

Syl. pt. 6, *State ex rel. Allstate Ins. Co. v. Gaughan*, 203 W. Va. 358, 508 S.E.2d 75 (1998).

20

for those costs, are specifically excluded from class membership.

On the issue of ascertainability, the circuit court made the following findings in its order denying WVU Hospitals' Rule 60(b) motion:

> 8.      The class definition in this matter provides sufficient parameters for ascertaining class members regarding both liability and damages and this Court finds that the Defendants' assertion that an individual assessment of each class member's damages will be necessary has not been demonstrated under the facts presented to this Court; the liability is absolutely common to the entire Class as the Statute applied to all persons requesting medical records during the relevant Class time period and the damages suffered by the Class, while not the same for each Class member, are common and ascertainable as the facts at this stage of the proceeding demonstrate that the WVUH Defendants cannot determine the actual cost of each individual medical record request as the Statute required since WVUH did not keep, or attempt to determine, such costs; however the Defendants' expert analysis set forth in the "time study" concluded that such individual charges would be the same as those charged under the subsequent version of the statute, thus providing a means of proving such individual cost; of course such is subject to further development of this case as it matures to trial; finally the claims process, as further supported by spreadsheets produced in this matter identifying patients of the Defendants that identify requests for medical records production during the class time period also are cogent evidence for this Court to find that ascertainability has been demonstrated as all of the Class requesters should be identifiable by these records produced by the Defendants.
>
> 9.      The claims process can be an appropriate mechanism to ascertain class members for purposes of settlement or trial of class action lawsuits.

21

10. Plaintiffs have submitted a proposed class notice and claims process in this matter, which would serve to ascertain the class members of this matter prior to settlement or trial.

11. Rule 23's requirement of ascertainability has been met in this matter for purposes of class certification, and no reconsideration of class certification on the element of ascertainability is warranted.

(Footnote omitted).

WVU Hospitals argue that the circuit court erred by failing to conduct a thorough analysis of ascertainability and contend that ascertaining the class in this matter would require individualized fact finding to determine whether each class member suffered a violation of the statute, who requested the patient records (the patient or an authorized representative), and who paid for the records that were produced.[5] Class Representatives respond that the circuit court conducted a thorough analysis and correctly found the class to be ascertainable, particularly where WVU Hospitals have produced spreadsheets showing each medical records request, the requestor, and the amount charged. They argue further that claim forms can be completed by potential class members to verify class membership by providing information as to who requested and initially paid for the records

---

[5] Identifying who paid for the medical records is significant to the issue of standing. In *State ex rel. Healthport Technologies, LLC v. Stucky*, 239 W. Va. 239, 800 S.E.2d 506 (2017), this Court found that a patient lacked standing to allege excessive fees for copies of his medical records where the fee charged for the records was paid solely by his lawyers.

and, where paid for by someone other than the patient, whether the cost has been reimbursed by the patient.

As we found above in our discussion of commonality, the question of liability in this case is common to all class members. Thus, at the outset we reject WVU Hospitals' contention that individualized fact finding is required to determine whether each class member suffered a violation of the statute for purposes of ascertainability.

As to WVU Hospitals' remaining grounds for arguing the class is not ascertainable, this Court has previously held that "[b]efore certifying a class pursuant to Rule 23 of the West Virginia Rules of Civil Procedure, it is imperative that the class be identified with sufficient specificity so that it is administratively feasible for the court to ascertain whether a particular individual is a member." Syl. pt. 3, *State ex rel. Metro. Life Ins. Co. v. Starcher*, 196 W. Va. 519, 474 S.E.2d 186 (1996). The *Metropolitan Life* Court additionally held that

> [t]o demonstrate the existence of a class pursuant to Rule 23 of the West Virginia Rules of Civil Procedure, it is not required that each class member be identified, but only that the class can be objectively defined. It is not a proper objection to certification that the class as defined may include some members who do not have claims because certification is conditional and may be altered, expanded, subdivided, or vacated as the case progresses toward resolution on the merits.

23

Syl. pt. 2, *id.* In *Metropolitan Life*, the petitioner sought a writ of prohibition complaining that the class definition contained a subjective element that required "determination of the mental state of either the insurance agent and/or the insured." *Id*. at 524, 474 S.E.2d at 191. *See also* 1 William B. Rubenstein, *Newberg on Class Actions* § 3:3 (5th ed. 2011) ("A class definition that depends on subjective criteria, such as class members' state of mind, will fail for lack of definiteness."). The Court found "no abuse of discretion regarding the circuit court's decision to certify the class," but granted a writ of prohibition, as moulded, solely to allow "the class and the mechanics for identifying its members [to] be defined in a more specific fashion." *Metro. Life*, 196 W. Va. at 526-27, 474 S.E.2d at 193-94.

Here, unlike *Metropolitan Life*, the class definition relies on objective, rather than subjective, criteria, i.e., those who submitted a written request for patient medical records to WVU Hospitals and paid the fees charged by WVU Hospitals to obtain those records. Moreover, WVU Hospitals have produced a spreadsheet that identifies all patients for whom records were requested during the relevant timeframe. As Class Representatives point out, it is thus administratively feasible for the court to ascertain whether a particular individual is a member of the class by having prospective class members identify who requested the records and who paid for them. *See* 1 Rubenstein, *Newberg on Class Actions* § 3:3 ("In some cases, courts address administrative feasibility from the prospective [sic]

of potential class members, asking whether a prospective plaintiff could easily identify himself or herself as having a right to recovery based on the description in the class definition.").

WVU Hospitals rely on *EQT Production Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014), to support their argument that ascertainability is not present here, but *EQT* is easily distinguishable. That case pertained to the payment of royalties for the production of coalbed methane gas ("CBM") when the ownership of the CBM estate is disputed. The *EQT* court observed that "the proposed classes raise serious ascertainability issues because they are defined to include both former and current gas estate owners." *Id.* at 359. The court explained that

> some class members will be easy to identify because the classes are all defined in reference to the ownership schedules that EQT and CNX submitted to the Board. When ownership has not changed hands, identifying class membership may be as simple as cross-referencing the ownership schedules the defendants themselves prepared . . . .
>
> Complications arise, however, because ownership of the gas estate has not been static since EQT and CNX first prepared the ownership schedules. Some of the schedules were prepared some twenty years ago, and they have not been updated to account for changes in ownership. The schedules therefore cannot aid a court in ascertaining those class members who obtained their interest in the gas estate after the schedules were first prepared.
>
> The district court largely glossed over this problem, merely noting that any ownership changes could be determined

by reference to local land records . . . . But resolving ownership based on land records can be a complicated and individualized process. *Cf. Johnson v. Kan. City S.*, 224 F.R.D. 382, 389 (S.D. Miss. 2004) (denying certification on ascertainability grounds when determining class membership "would require individualized review of thousands of title documents containing differing and diverse conveyance language that would have to be analyzed according to the specific language used and applicable case law to ascertain the intention of the parties to the conveyances and the legal effect of the instruments"), *aff'd sub nom. Johnson v. Kan. City S. Ry. Co.*, 208 Fed. Appx. 292, 297 (5th Cir. 2006). As the record in this case highlights, numerous heirship, intestacy, and title-defect issues plague many of the potential class members' claims to the gas estate. In our view, these complications pose a significant administrative barrier to ascertaining the ownership classes.

*EQT*, 764 F.3d at 359 (footnote omitted). The instant matter simply does not involve the type of complex individualized title issues that posed a significant administrative barrier to ascertainability in *EQT*. Based upon the foregoing discussion, we find no grounds for granting a writ of prohibition as to ascertainability.

### C. Predominance

On remand, the circuit court entered two orders related to WVU Hospitals' challenges to the class certification. On October 30, 2020, the circuit court entered an order denying WVU Hospitals' renewed motion to decertify class.[6] Thereafter, on July 28, 2021,

___

[6] WVU Hospitals' renewed motion to decertify the class, which was filed on September 17, 2019, prior to this Court's decision in *State ex rel. Surnaik Holdings of WV,*

26

the circuit court entered an order denying WVU Hospitals' Rule 60(b) motion asking the circuit court to reconsider its order denying WVU Hospitals' renewed motion to decertify class. Neither of these orders address predominance. In fact, it appears that the only order that includes a predominance analysis is the circuit court's order of April 16, 2014, which granted Class Representatives' motion to certify the class. In that order, the circuit court applied the standard for predominance from *In re West Virginia Rezulin Litigation*, 214 W. Va. 52, 71-72, 585 S.E.2d 52, 71-72 (2003), *modified by State ex rel. Surnaik Holdings of WV, LLC v. Bedell*, 244 W. Va. 248, 852 S.E.2d 748 (2020), which was in effect at that time. With respect to predominance, the *In re Rezulin* Court explained that

> The predominance criterion in Rule 23(b)(3) is a corollary to the "commonality" requirement found in Rule 23(a)(2). While the "commonality" requirement simply requires a showing of common questions, the "predominance" requirement requires a showing that the common questions of law or fact outweigh individual questions.

> "A conclusion on the issue of predominance requires an evaluation of the legal issues and the proof needed to establish them. As a matter of efficient judicial administration, the goal is to save time and money for the parties and the public and to promote consistent decisions for people with similar claims." *In the Matter of Cadillac V8-6-4 Class Action*, 93 N.J. 412, 430, 461 A.2d 736, 745 (1983). The predominance requirement is not a rigid test, but rather contemplates a review of many factors, the central question being whether "adjudication of the common issues in the particular suit has important and desirable advantages of judicial economy

---

*LLC v. Bedell*, 244 W. Va. 248, 852 S.E.2d 748 (2020), did not challenge the circuit court's prior analysis of predominance.

compared to all other issues, or when viewed by themselves."
2 *Newberg on Class Actions*, 4th Ed., § 4:25 at 174.

214 W. Va. at 71-72, 585 S.E.2d at 71-72. The circuit court's order of April 16, 2014, was the subject of WVU Hospitals' first petition for writ of prohibition that was refused by this Court in an unpublished order. *Gaujot I*, No. 14-0611 (W. Va. filed August 26, 2014).

Now, WVU Hospitals argue that the circuit court violated this Court's mandate in *Gaujot II* by failing to apply the standard for predominance announced by this Court in *State ex rel. Surnaik Holdings of WV, LLC v. Bedell*, 244 W. Va. 248, 852 S.E.2d 748,[7] which was decided in November 2020, more than six years after the circuit court

---

[7] Under the *Surnaik* standard,

When a class action certification is being sought pursuant to West Virginia Rule of Civil Procedure 23(b)(3), a class action may be certified only if the circuit court is satisfied, after a thorough analysis, that the predominance and superiority prerequisites of Rule 23(b)(3) have been satisfied. The thorough analysis of the predominance requirement of West Virginia Rule of Civil Procedure 23(b)(3) includes (1) identifying the parties' claims and defenses and their respective elements; (2) determining whether these issues are common questions or individual questions by analyzing how each party will prove them at trial; and (3) determining whether the common questions predominate. In addition, circuit courts should assess predominance with its overarching purpose in mind—namely, ensuring that a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. This analysis must be placed in the written

28

analyzed predominance, and more than a year after the *Gaujot II* decision was handed down. WVU Hospitals misconstrue the mandate in *Gaujot II* as *requiring* the circuit court to address predominance.

When a case is remanded by this Court, following either an appeal or an original jurisdiction proceeding,[8] the mandate rule is implicated:

> We have explained that under the mandate rule
>
> > [a] circuit court has no power, in a cause decided by the Appellate Court, to re-hear it as to any matter so decided, and, though it must interpret the decree or mandate of the Appellate Court, in entering orders and decrees to carry it into effect, any decree it may enter that is inconsistent with the mandate is erroneous and will be reversed.
>
> Syl. Pt. 1, *Johnson v. Gould*, 62 W. Va. 599, 59 S.E. 611 (1907). *See also United States v. Vigneau*, 337 F.3d 62, 67 (1st Cir. 2003) ("One aspect of the law of the case doctrine is the 'mandate' rule, which requires a district court to follow the decisions of a higher court.").

---

record of the case by including it in the circuit court's order regarding class certification.

Syl. pt. 7, *Surnaik*, 244 W. Va. 248, 852 S.E.2d 748.

[8] *See State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W. Va. 802, 808 n.7, 591 S.E.2d 728, 734 n.7 (2003) (stating that "for purposes of the mandate rule, we consider the distinctions between appeals and original jurisdiction proceedings to be inconsequential.").

*State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W. Va. 802, 808, 591 S.E.2d 728,

734 (footnote omitted).  However,

> The mandate rule is not limited to matters we decide either explicitly or implicitly on appeal.  Rather, when this Court's decision of a matter results in the case being remanded to the circuit court for additional proceedings, our mandate controls the framework that the circuit court must use in effecting the remand.

*Id.* at 809, 591 S.E.2d at 735.  Accordingly,

> [w]hen this Court remands a case to the circuit court, the remand can be either general or limited in scope.  Limited remands explicitly outline the issues to be addressed by the circuit court and create a narrow framework within which the circuit court must operate.  General remands, in contrast, give circuit courts authority to address all matters as long as remaining consistent with the remand.

Syl. pt. 2, *id.*, 214 W. Va. 802, 591 S.E.2d 728.  In considering whether a remand is general

or limited,

> a court must look to the entire mandate, examining every part of the opinion to determine if a remand is general or limited, as "[t]he relevant language could appear anywhere in an opinion or order, including a designated paragraph or section, or certain key identifiable language." [*U.S. v. Campbell*, 168 F.3d 263, 266-67 (6th Cir. 1999).]  We stress though "that individual paragraphs and sentences must not be read out of context." *Id.* at 267.  Moreover, in the absence of explicit instructions, a remand order is presumptively general. *Id.* at 268.

*Id.* at 809, 591 S.E.2d at 735 (footnote omitted).  Under this standard, then,

> [u]pon remand of a case for further proceedings after a decision by this Court, the circuit court must proceed in accordance with the mandate and the law of the case as

established on appeal. The trial court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.

Syl pt. 3, *id.*, 214 W. Va. 802, 591 S.E.2d 728.

After careful examination of the *Gaujot II* opinion, we perceive the remand was limited as to the requirements for certification under Rule 23 of the West Virginia Rules of Civil Procedure. The Court vacated the circuit court's order denying WVU Hospitals' motion to decertify the class, but addressed only commonality under Rule 23. The *Gaujot II* Court posed questions related to commonality and commented:

> These are questions that must be decided in the first instance by the circuit court. On the record before us, it does not appear that the circuit court has addressed the question of commonality with sufficient factual findings and conclusions to allow us to conclude that its certification decision and subsequent refusal to decertify the class were the product of "a thorough analysis[.]" Syl. Pt. 8 (in part), *Chemtall*, 216 W. Va. 443, 607 S.E.2d 772.

*Gaujot II*, 242 W. Va. at 64, 829 S.E.2d at 64. The Court also found that the circuit court "exceeded its legitimate powers by certifying the class while failing to conduct a sufficiently thorough analysis of the case to determine whether the commonality required for class certification under Rule 23 of the *West Virginia Rules of Civil Procedure* is present, " and "urge[d] the circuit court to determine whether the requirements of Rule 23, particularly as they relate to commonality, have been met and, if so, to craft a class

31

definition consistent with such findings." *Id.* Finally, the Court directed that the case be "remanded for further actions consistent with this opinion." *Id.*

Contrary to the position taken by WVU Hospitals, this remand merely gives the circuit court the "authority to address . . . matters [relating to the Rule 23 requirements] as long as remaining consistent with the remand." Syl. pt. 2, in part, *Frazier & Oxley*, 214 W. Va. 802, 591 S.E.2d 728. Taken in context, there is nothing in *Gaujot II* that expressly directed the circuit court to address any of the Rule 23 factors other than commonality. While the limited remand in *Gaujot II* was broad enough to permit the circuit court to revisit predominance, it did not direct the circuit court to engage in such an analysis.

Given the circumstances of this case, where the circuit court conducted its predominance evaluation eight years ago under the standard then in effect, and predominance was neither raised nor discussed in *Gaujot II*, we find no violation of this Court's mandate in *Gaujot II* by virtue of the circuit court's decision to not revisit its predominance analysis, and we find no grounds upon which to conclude that the circuit court committed a substantial, clear-cut, legal error that would warrant the issuance of a writ of prohibition in this regard. *See* Syl. pt. 1, in part, *Hinkle v. Black*, 164 W. Va. 112, 262 S.E.2d 744 (1979) ("[T]his Court will use prohibition . . . to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or

32

common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance."), *superseded by statute on other grounds as stated in State ex rel. Thornhill Grp., Inc. v. King*, 233 W. Va. 564, 759 S.E.2d 795 (2014).

### D. Ethical Concerns

WVU Hospitals' final ground for relief concerns the inclusion of attorneys in the circuit court's definition of class members. In footnote 16 of *Gaujot II*, this Court commented:

> We would note some concerns about the circuit court's July 5, 2018 order defining a class of plaintiffs that includes attorneys who requested their clients' medical records and "paid the fees[.]" The order would appear to mean that an attorney who requests and pays for a client's medical records (at least until such time, if any, that the client reimburses the attorney) would personally be a member of the class and, therefore, a litigant in the action. If so, are the attorney's efforts for the attorney or the client? Such a scenario raises questions regarding ethical standards governing the attorney's role in the litigation. *See* W. Va. R. Prof. Conduct 1.8(i) [2015] ("A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client[.]"). We believe that the question of whether attorneys who pay for their clients' records should be included in any class should be given careful consideration if, after further proceedings below, the circuit court determines that Mr. Thomack and Mr. Jenkins's consolidated claims satisfy the commonality and other requirements of Rule 23.

33

242 W. Va. at 64, 829 S.E.2d at 64. During a status hearing following our remand of the case, the circuit court acknowledged this Court's concern and asked the parties to provide the court with more information pertaining to the inclusion of lawyers in the class. Any additional information provided by the parties does not appear to be included in the appendix record. Thereafter, during the hearing on WVU Hospitals' renewed motion to decertify the class, the circuit court admitted that it made a mistake in the manner in which it had defined the class with respect to the inclusion of certain lawyers. Ultimately, the circuit court re-defined the class as follows:

> Any person, who, from January 18, 2008[,] until June 5, 2014,
>
> (1) requested in writing copies of patient medical records from Defendant, West Virginia University Hospitals, Inc., including the patient or any person who was an authorized agent or authorized representative of the patient; and
>
> (2) paid the fees charged by the Defendant to obtain such requested medical records; and
>
> (3) provided however, that attorneys who paid for a client's medical records in connection with investigation of claims and/or litigation on behalf of that client, but were never repaid for those costs, are specifically excluded from class membership.

WVU Hospitals argue that the circuit court violated this Court's mandate in *Gaujot II* by failing to give careful consideration to ethical issues implicated by including lawyers within the class definition. However, WVU Hospitals' argument appears to extend

34

beyond ethical concerns, and they now seek to preclude all lawyers from inclusion in the class.[9] Class Representatives contend that the circuit court did not fail to carefully consider ethical issues associated with the inclusion of lawyers as class members, but, rather, responded to the cautionary comments by amending the class definition to exclude lawyers who paid for a client's medical records in connection with investigation of claims and/or litigation on behalf of that client, but were never repaid for those costs.

First, we do not find footnote 16 of *Gaujot II* to be part of this Court's mandate. Instead, the concern expressed therein is dicta. *See Frank A. v. Ames*, ___ W. Va. ___, ___ n.17, 866 S.E.2d 210, 226 n.17 (2021) ("It is well settled in our jurisprudence that 'language in a footnote generally should be considered obiter dicta which, by definition, is language "unnecessary to the decision in the case and therefore not precedential."' *State ex rel. Medical Assurance v. Recht*, 213 W. Va. 457, 471, 583 S.E.2d 80, 94 (2003) (citation omitted)."); *W. Va. State Police, Dep't of Mil. Affs. & Pub. Safety v. J.H. by & through L.D.*, 244 W. Va. 720, 734, 856 S.E.2d 679, 693 (2021) (same). Indeed, the comments made in footnote 16 merely express a concern; they do not decide any issue raised in the

---

[9] WVU Hospitals now complain that the class as currently defined would include lawyers who paid for medical records of a person who was not a client of that lawyer. Absent an attorney/client relationship, it does not appear that Rule 1.8 of the West Virginia Rules of Professional Conduct would be implicated.

case. This Court observed in *Frazier & Oxley* that the law of the case doctrine does not extend to dicta.

> "[D]icta . . . neither creates precedent, *In re Kanawha Valley Bank*, 144 W. Va. 346, 382-83, 109 S.E.2d 649, 669 (1959), nor establishes law of the case. *Laitram Corp.* [*v. NEC Corp.*, 115 F.3d 947, 951 (Fed. Cir. 1997)] ("Although the district court cites much authority for the proposition that issues decided implicitly by courts of appeals may not be reexamined by the district court, the rule is actually applicable only to those issues decided by *necessary* implication."); *Simmons v. Culpepper*, 937 S.W.2d 938, 942 (Tenn. Ct. App. 1996) ("The law of the case doctrine does not extend to mere dictum.").

214 W. Va. at 808-09 n.8, 591 S.E.2d at 734-35 n.8. Thus, even if the circuit court failed to consider this Court's cautionary comments in footnote 16 of *Gaujot II*, that failure did not violate this Court's mandate.

Furthermore, this Court's comments in footnote 16 specifically interpreted the class definition as meaning "that an attorney who requests and pays for a client's medical records (at least until such time, if any, that the client reimburses the attorney) would personally be a member of the class and, therefore, a litigant in the action." *Gaujot II*, 242 W. Va. at 64, 829 S.E.2d at 64. The *Gaujot II* Court then encouraged the circuit court to give careful consideration to "the question of whether attorneys who pay for their clients' records should be included in any class." *Id.* This is exactly the question that the circuit court addressed when it determined to exclude from the class "attorneys who paid

36

for a client's medical records in connection with investigation of claims and/or litigation on behalf of that client, but were never repaid for those costs."

To the extent that WVU Hospitals now wish to further tweak the class definition, that should be accomplished in the circuit court, not by repeated petitions seeking writs of prohibition from this Court encouraging us to micromanage the litigation below. As we have recognized, "certification is conditional and may be altered, expanded, subdivided, or vacated as the case progresses toward resolution on the merits." Syl. pt. 2, in part, *Metro. Life*, 196 W. Va. 519, 474 S.E.2d 186. We remind counsel that

> As an extraordinary remedy, this Court reserves the granting of [a writ of prohibition] to "really extraordinary causes." *State ex rel. Suriano v. Gaughan*, 198 W. Va. 339, 345, 480 S.E.2d 548, 554 (1996) (internal quotations and citations omitted). Accordingly, "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers." Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977). Moreover, "this Court will use prohibition . . . to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance." Syl. pt. 1, in part, *Hinkle v. Black*, 164 W. Va. 112, 262 S.E.2d 744 (1979), *superseded by statute on other grounds as stated in State ex rel. Thornhill Grp., Inc. v. King*, 233 W. Va. 564, 759 S.E.2d 795 (2014).

*State ex rel. Am. Elec. Power Co. v. Nibert*, 237 W. Va. 14, 19, 784 S.E.2d 713, 718 (2016). Accordingly, we find no grounds warranting an extraordinary writ of prohibition as to the inclusion of attorneys in the circuit court's definition of class members.

## IV.

## CONCLUSION

A writ of prohibition is an extraordinary remedy invoking this Court's original jurisdiction, and we do not grant such relief lightly. In their third petition seeking this extraordinary writ, WVU Hospitals once again challenge the circuit court's class certification in an action that originated more than nine years ago. This case has been so prolonged by these filings, WVU Hospitals now endeavor to benefit from the delays they themselves created by attempting to apply a newly announced standard for predominance that was adopted more than six years after the circuit court decided that issue. This is not a proper use of this Court's original jurisdiction. As we explain in the body of this opinion, we find no inadequacy in the circuit court's findings of commonality and ascertainability. We further conclude that the circuit court was under no obligation to revisit its predominance analysis or the class definition under this Court's prior mandate. Accordingly, we deny the requested writ of prohibition.

Writ denied.